**TRADERS & GENERAL INS. CO. v. JAQUES et al.**

No. 8914.

Court of Civil Appeals of Texas. Austin.

July 5, 1939.

Rehearing Denied July 22, 1939.

Lightfoot, Robertson, Gano & Johnston, of Fort Worth, for plaintiff in error.

Everett L. Looney and Cofer & Cofer, all of Austin, for defendants in error J. C. Jaques et al.

Hart & Brown, of Austin, for defendant in error Texas Indemnity Ins. Co.

McCLENDON, Chief Justice.

This is a workman's compensation case. The appeal is by the insurance carrier, Traders & General Insurance Company, referred to herein as the Traders, from a judgment against it upon a special issue jury verdict, awarding to appellee Jaques, the insured employee of L. L. Massey, the lump sum of $7,213.77 plus interest and costs, in a suit by Jaques in the nature of an appeal from a final order of the Industrial Accident Board, referred to herein as the Board, denying Jaques's claim for compensation.

As grounds for reversal of the trial court's judgment, the Traders present 27 assignments of error with 14 supporting propositions. The gist of these, stated substantially, are embodied in the following six contentions:

1. No probative evidence was offered by Jaques establishing prima facie or otherwise that the Traders had executed the coverage policy.

2. The alleged injury having occurred January 6, 1937, and notice of claim not having been filed with the Board until February 28, 1938, the evidence was insufficient as a matter of law to support a finding of "good cause", R.C.S. Art. 8307, § 4a, for failure to give notice and file claim within the statutory periods of 30 days and 6 months respectively after the occurrence of the injury.

3. Jaques was not the employee of Massey but of Morrison-Knudsen Company, Inc., called herein the Morrison, whose employees were covered by a policy issued by appellee Texas Indemnity Insurance Company.

4. Jaques's injury did not arise while he was acting in the course of his employment.

5. The evidence does not support the finding that Jaques's disability (active tuberculosis) resulted from the asserted injury (inhalation of cement dust).

6. Three of the special issues were confusing in the manner in which the burden of proof was presented and improperly placed upon the Traders the burden to establish the negative of such issues by a preponderance of the evidence.

Upon the first contention:

The covering policy was plead by Jaques; its execution was not denied under oath by the Traders as required by R.C.S. Art. 8307, § 5, as amended in 1931, Reg.Sess. 42nd Leg., p. 378, Ch. 224, § 1, Vernon's Ann.Civ.St. art. 8307, § 5, in order to put in issue the fact of its execution. Jaques introduced in evidence for all purposes certified copy of the official notice of the Board that the Traders was the insurance carrier of Massey under a policy effective 9-2-36 and expiring 9-2-37. This was objected to and the objection overruled. After considerable argument engaged in by the respective attorneys as to whether the notice should be read to the jury, the following transpired:

"Mr. Cofer: We want to read the Notice that Employer has become a Subscriber.

"Mr. Gano: We object to that for the reasons heretofore stated in our objections to plaintiff's Exhibit No. Three.

"Mr. Cofer: If he objects to it, we will waive the reading.

"The Court: All right."

The Traders contend that because the notice was not read to the jury it was not properly in evidence and there was no proof that it had issued the policy of coverage. In support of this contention, it cites Traders & General Ins. Co. v. Milliken, Tex.Civ.App., 87 S.W.2d 503; Texas Indemnity Ins. Co. v. Allison, Tex.Civ.App., 75 S.W.2d 999; and Zurich General Accident & Liability Ins. Co. v. Thompson, Tex.Civ.App., 19 S.W.2d 153. These cases merely hold that where the notice is offered for the limited purpose of showing jurisdiction it can not be considered as proof of the facts recited in the notice. There are a number of other decisions to the same effect. The holding is inapplicable here where the notice was offered for all purposes. The amended section provides that it "shall be prima facie proof of all facts stated in such notice in the trial of said cause unless same is denied under oath by the opposing party therein." The fact that it was not read to the jury was of no consequence. It was in evidence for all purposes, and there being no denial under oath of the policy's execution, the "prima facie

proof" of its execution evidenced by the recitals in the notice became conclusive proof thereof; and there was no fact issue thereon to be submitted to the jury. This is the plain intent of the amendment, and we do not see how it can be given any other construction. It was so held in Maryland Casualty Co. v. Guzman, Tex.Civ.App., 79 S.W.2d 330, in which the trial court's judgment in favor of the employee was reversed on other grounds. The Supreme Court reversed the Civil Appeals judgment and affirmed that of the trial court, thereby necessarily approving the holding of the former upon the question at bar. Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356. Other supporting authorities are: Associated Indemnity Corp. v. Baker, Tex.Civ.App., 76 S.W.2d 153, error dismissed; 45 Tex.Jur., p. 828, § 300.

■ Moreover, Massey, the employer, testified that he had a policy covering his employees written by the Traders and in force at the time of Jaques's injury; and there was no evidence to the contrary. The specific issue was submitted to the jury and answered favorably to Jaques. Independently of the notice this evidence was sufficient to sustain the finding. Barron v. Texas Employers' Ins. Ass'n, Tex.Com. App., 36 S.W.2d 464, 467, wherein it was said that: "* * * very slight evidence should be held sufficient to establish such fact since an insurance company is in position to show conclusively by its records whether such policy has in fact been issued, and it fails to do so. Its failure to offer such evidence in the face of the showing made may be considered as strongly corroborative of the fact that such policy has in fact been issued."

The following quotation from Jaques's brief is a fair resume of the testimony, viewed most strongly in support of the judgment, as it relates to the second contention above:

"J. C. Jaques testified that he was employed by L. L. Massey as foreman at Roy Inks Dam. That Massey was in the hauling business and not in any other business. That on January 6, 1937, he got strangled by the inhalation of some cement. That he was sick for several days and finally went home and went to bed.

"That he had never within his knowledge had tuberculosis, but that after his injury a serious cough developed. After he had been in bed for about two weeks, he got up and attended to some business and

thought he would be all right. He had worked out of town and attended to that. Finally about the 1st of June he had a complete breakdown and went to bed. He was attended by Dr. White at his home for about a month, and then later in July after an X-ray, Dr. White advised him he had tuberculosis and must go immediately to the sanatorium at San Angelo. Dr. White at no time attributed his condition to his injury from inhalation of the cement dust, and plaintiff did not know that was what caused it. From this time on plaintiff was unable to attend to any business and was in bed and in the hospital until December 25, 1937. On that day he returned home and went to bed and stayed in bed until up in February when he went to see Dr. White, who sent him to a specialist in lung diseases, Dr. Moore. Here for the first time he was advised that his condition resulted from the injury in inhaling the cement dust and the severe coughing occasioned thereby. He then went immediately to his attorney, Mr. Looney, who on February 28, 1938, filed his notice and claim with the Industrial Accident Board.

"Dr. White's testimony fully corroborated the testimony of Mr. Jaques. He never told Jaques that his condition was caused by his injury received.

"Neither Dr. Adcock nor Dr. McKnight advised him as to what caused his condition.

"The evidence is undisputed that he did not learn of this until Dr. Moore so advised him in February, 1938. From June, 1937, until February 16, 1938 (when he first went to Dr. Moore's office), he was continually to his bed and unable to be up at all.

"Mrs. Jaques and J. E. Jaques corroborated this testimony."

"Mr. Looney, attorney for Jaques, testified that Jaques came to see him about February 16, 1938, and that he investigated the law and filed the claim as promptly as proper attention to the matter would permit."

■ The statute does not define "good cause"; and manifestly whether in a given case the circumstances which occasioned the delay constitute "good cause," is a question of fact; unless the evidence be of that conclusive character that no reasonable and substantial inference supporting "good cause" may be drawn from it. Williamson v. Tex. Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088. We think the evidence clearly sufficient to support the finding of

"good cause" in this case. The usual test laid down is: whether the same degree of diligence was used as that of an ordinarily prudent person similarly situated. See 45 Tex.Jur., p. 739, note 2 for list of supporting authorities. Cases closely analogous in their facts are Texas Employers Ins. Ass'n, v. Little, Tex.Civ.App., 96 S.W.2d 677, error dismissed, and Fidelity & Casualty Co. v. McKay, 5 Cir., 73 F.2d 828, U.S. Circuit Judge Hutcheson writing.

The third contention above to the effect that under the conclusive evidence, Jaques was not working for Massey but for the Morrison at the time of his injury, is based upon a contract between these two contractors under which the latter was to load and unload the trucks; the evidence showing that Jaques's injury was sustained while unloading a truck or assisting therein. The uncontradicted evidence shows that Jaques knew nothing of this contract; that he was employed by Massey and worked under his direction. The superintendent of the Morrison testified that Jaques was not working for his company but was working for Massey. The latter could not by private agreement, unknown to his employee, shift to a third person his responsibility as employer. See Texas Employers' Ins. Ass'n v. Jones, Tex.Civ.App., 70 S.W. 2d 1014, error dismissed.

The following resume of Jaques's testimony relative to the fourth contention, above, is copied from the Traders' brief: "Massey was a hauling contractor; and engaged in hauling sand, gravel and general transportation and my job as foreman was to keep these trucks moving; that on the morning of January 6, 1937, while he was knocking cement loose in one of the trucks he got strangled on cement dust; that just prior thereto he met Morrison-Knudsen's foreman who bawled him out because one of the cement trucks had the other trucks tied up; and this Morrison-Knudsen foreman threatened to cancel Massey's contract if something was not done about it; and that he went up to where this cement truck was and took a hammer and beat on the truck to cause the cement to turn loose and when it did a big wad of it fell out and blew in his face and he inhaled a lot of it in his mouth and got strangled."

This testimony clearly supports the finding that Jaques was engaged in his master's business when he was injured; and that the injury was received in the course of his employment

Upon the fifth contention above, that the evidence does not support the finding that the active tuberculosis resulted from inhalation of cement dust, we quote the following from Jaques's brief as a fair statement of the supporting evidence, viewed most strongly in support of the judgment:

"J. C. Jaques, plaintiff, tsetified in his own behalf that prior to January 6, 1937, he had always been in good health and had done hard work, that in 1932 or 1933 he had had pneumonia or pleurisy; that he had never had tuberculosis; that he had never run any constant or intermittent temperature; that on January 6, 1937, he walked rapidly up a ramp and while dumping cement from a truck inhaled into his lungs a large quantity of cement dust blown by a sudden gust of wind. That this caused severe burning, coughing, and pain; that he was forced to lie down, that he rested during the day and spit up considerable foreign matter and blood; that he stayed around camp about two weeks; and then went home to bed where he stayed ten days; after that he was up and attended to some work on jobs at different places; that he had a complete breakdown around the first of June, 1937, and that around the first of July his case was diagnosed as tuberculosis. That since that time he has had active tuberculosis and is totally and permanently disabled is not disputed.

"Jaques's testimony as to his health prior to January 6, 1937 was corroborated by the testimony of Mrs. J. C. Jaques, and by the testimony of J. E. Jaques.

"Dr. F. N. Moore, a doctor and specialist in lung diseases testified that he examined Jaques first about February 16, 1938, and that he had active tuberculosis; that he had it at the time of the trial and was totally and permanently disabled. Dr. Moore testified further that from the history which Jaques had given him of his past life and the injury and inhalation of the cement dust at the dam, that his tuberculosis and condition at the time of trial was caused by the severe strain from the inhaling of the cement dust and coughing following; that in absence of an injury a latent case of tuberculosis would remain latent and would not become active, and would never develop into active tuberculosis; that in his opinion if Jaques was able to do strenuous labor prior to January 6, 1937, then he did not have active tuberculosis prior to that time.

"On redirect examination in reply to a hypothetical question setting forth all material evidence Dr. Moore testified that the injury received by Jaques caused a case of active tuberculosis whereas before there had only been a latent tubercular condition.

"Dr. White in his report of Jaques's condition made to the sanatorium stated that at the time he examined Jaques, Jaques had had tuberculosis about six months.

"Dr. McKnight testified that it was possible that Jaques's tubercular condition had been inactive prior to January 6, 1937.

"Dr. Grey, offered by defendant, testified in answer to the defendant's hypothetical question that in his opinion the injury by inhaling cement dust would irritate an old infection.

"Dr. Adcock, a witness for defendant, answered to plaintiff's hypothetical question that the injury by inhaling the cement dust could have caused the active tuberculosis; and that he had known of similar cases.

"None of the doctors disputed the theory of Dr. Moore. The most that can be said of their testimony is that Dr. McKnight and Dr. Adcock did not consider Jaques's condition attributable to the inhalation of the cement dust. But they both recognized the possibility."

The applicable rule is thus stated in 45 Tex.Jur., p. 492: "If a protected employee sustains an accidental injury of the character defined in the law and from which disability or death results, it is compensable even though at the time he was suffering from some disease or infirmity that rendered him more susceptible to such an injury or that aggravated or enhanced its effect. That is to say, 'if there be a real injury, the background of his peculiarities will not defeat compensation for it,' and 'there is no defense to a claim for compensation, based on the fact that the injuries would not have been as great had the employee been in a perfectly healthy condition.' The employer accepts the employee subject to his condition when he enters the employment. Moreover, the fact that the disease was a concurring cause with the injuries in causing disability or death does not preclude the grant of compensation."

The evidence amply supported the finding.

The sixth contention, above, is wholly without merit. The issues were framed so that each properly placed the burden of proof in the approved manner.

From the viewpoint of the objections urged against them, they are models of accuracy, precision, and clarity; and upon no reasonable hypothesis can they be regarded as confusing or misleading. Gulf C. & S. F. R. Co. v. Giun, 131 Tex. 548, 116 S.W.2d 693, 116 A.L.R. 795. For list of other cases on this subject, Texas Fire Casualty Underwriters v. Blair, Tex.Civ.App., 130 S.W. 2d 409.

The trial court's judgment is affirmed.

Affirmed.