## TEXAS EMPLOYERS INS. ASS'N v. FOWLER.

### No. 5128.

Court of Civil Appeals of Texas. Amarillo.

March 18, 1940.

Rehearing Denied May 27, 1940.

546

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellant.

O'Dowd & O'Dowd, of Waco, for appellee.

STOKES, Justice.

This suit was instituted in the district court by appellee, W. S. Fowler, in the nature of an appeal from the final ruling of the Industrial Accident Board upon a claim filed by him for compensation under the provisions of the Workmen's Compensation Law, art. 8306 et seq., R.C.S.1925, Vernon's Ann.Civ.St. art. 8306 et seq. The record shows appellee was employed by Phillips Petroleum Company for some twelve years prior to December 12, 1937, and that appellant was the compensation insurance carrier. Appellee alleged substantially that on

March 5, 1936, while engaged in the course of his employment as a welder, he was injured in a fall of some fifteen feet from a cooling tower, and that on October 20, 1937, he was again injured while engaged in the course of his employment, this last injury resulting from an explosion in an electric switch box which, during the process of welding, had ceased to operate. The accident occurred when he was engaged in an effort to adjust it. The record shows that after the first accident, consisting of his fall from the cooling tower, appellee was, by other employees, carried to the company's doctor, who examined him and reported a fracture of his wrist and bruises in the region of his back and hip. As a result of this first injury, appellee was disabled for a period of five weeks, during which appellant paid him compensation at the rate of $20 per week. In examinations made by the company's physician, Dr. Brooks, consisting of X-ray photographs and physical examinations, he failed to find any fractures of vertebrae or other bones in the region of the injury, and at the end of the five weeks period, he advised appellee that, if appellee felt able to do so, in his opinion appellee had sufficiently recovered that he may return to his work. Appellee testified that he returned to his work but for several weeks he avoided heavy work and left the performance of most of it to his helper, but the record shows he continued in his employment until the second accident which occurred October 20, 1937. At that time he was engaged in the operation of a welding device which was propelled by an electric current being transmitted from a high line through an electric switch which was encased in a box a short distance from the place where he was working. The current was, for some reason, interrupted and appellee went to the switch box to ascertain the cause. In an effort to adjust the difficulty, he pushed upon a switch and immediately an explosion and flash occurred which resulted in burning appellee's face and ears and injuring his eyes. When the flash occurred appellee lurched backward and wrenched his back in some manner and that, according to his testimony, thereafter he had severe pains in the region of his back, shoulders and neck, in addition to rather severe burns upon his face, eyes and ears. Following this injury he ceased work for a few days and again returned to his welding job, which he continued until December 12, 1937, at which time he ceased work altogether. He testified, in effect, that his condition grew steadily worse after his injury of October 20, 1937, until the 12th of December, when he reached the conclusion that he was disabled. On the 12th of January, 1938, appellee, at his own request, was examined by Dr. Maxfield at Waco, who testified that appellee was weak, undernourished and generally low in vitality; that he showed a generally debilitated condition and was running temperature. He said that his X-ray films disclosed a fracture of the upper border of the ilium which extended into the sacroiliac and was about two inches in length. He described other fractures which he said were serious and well-defined. He said the conditions he found were sufficient to produce the pain of which appellee complained, and that in his opinion the pain would continue and that the injuries had incapacitated appellee from performing the regular duties of a workman at physical manual labor.

No claim for compensation was filed with the Industrial Accident Board by appellee for either of the alleged injuries at the times he received them but he was paid compensation by appellant for five weeks following the first injury and a report of both injuries was made to the Industrial Accident Board by his employer. Appellee alleged total permanent incapacity by reason of the injury of October 20, 1937, when the electric switch box exploded and, in the alternative, that if his incapacity did not result from that injury, then it was attributable to the accident and injury of March 5, 1936, or to a combination of both of the injuries. He alleged that, although he did not file with the Industrial Accident Board his claim for compensation within the six months prescribed by the statute, he had good cause for not doing so in that he believed his injuries were of a trivial nature and that they would not result in serious or permanent incapacity.

The case was submitted to a jury upon special issues, all of which were answered favorably to appellee, including the necessity for the payment of the compensation in a lump sum, and the court rendered judgment in his favor against appellant for $5,425.22 to be paid in a lump sum.

The judgment was based upon the finding of the jury to the effect that appellee was totally and permanently incapacitated, 90% of which was attributable to the injuries he received in the first accident of March 5, 1936, and 10% being attributable

to the injuries received in the accident of October 20, 1937.

Appellant duly excepted to the judgment, gave notice of appeal, and presents the case in this court upon appropriate assignments of error and propositions of law in which it attacks the judgment and contends it should be reversed, or reformed as to the 90% of incapacity which was attributed to the injury of March 5, 1936, upon the grounds, first, that appellee failed to show good cause for the delay from March 5, 1936, until February 4, 1938, in filing with the Industrial Accident Board his claim for compensation; secondly, error in the form of special issue No. 31; thirdly, that the court refused to submit the case to the jury upon the theory pleaded and proved by appellee in reference to the bases of his reasons for delay in filing his claim with the Industrial Accident Board; fourthly, error in the instruction given to the jury in connection with the definition of the term "partial incapacity", and, fifthly, the refusal of the court to give a tendered precautionary instruction in reference to the manner in which the jury should consider the circumstances under which appellee was discharged or ceased his employment.

The jury found that appellee sustained an injury on March 5, 1936, which incapacitated him to perform labor and that he sustained another injury on October 20, 1937. They found that as a result of the two injuries he became totally incapacitated to work on the 12th of December, 1937. They found that until about the time he filed his claim for compensation he believed his injuries of March 5, 1936, would not disable him; that such belief prevented him from filing his claim for compensation until the time it was filed, and that a reasonably prudent person, situated as he was, would, for that reason, have delayed the filing of his claim for compensation for such length of time.

The testimony shows that during most, if not all, of the time from March 5, 1936, until October 20, 1937, when appellee received his second injury, he was not only not incapacitated for work but apparently performed the duties of his employment without serious difficulty. He said at times his condition was not fully normal but that he did not believe his injuries were serious, principally because of the advice which had been given him by Dr. Brooks, the company's physician, to the effect that his injuries of March 5, 1936, consisted merely of bruised muscles and tissues in the region of his back and hip, but his testimony indicates that after the second injury of October 20, 1937, his condition grew steadily worse until he ceased employment on December 12, 1937. A month later he consulted Dr. Maxfield at Waco and was advised by him that he had suffered fractures of bones in the region of his hip and back and that he was then, and had for some time been, unable to perform any sort of labor. He said that when he attempted to do so he had continuous pain; that his eyes were seriously affected; that he had pains in his back and shoulders; that he was nervous, and that he could not perform any kind of work. He said that his hip and back ached and at times he had excruciating pains in that region. He said that these conditions continued and that he was suffering from them at the time of the trial.

■ The first contention made by appellant is brought forward under its first, second and third propositions of law. Sec. 4a of Art. 8307 provides that notice of an injury shall be given to the association or employer within thirty days after the injury and that unless a claim for compensation with respect thereto shall have been made within six months after the occurrence of same, no proceeding for compensation shall be maintained. The section further provides, however, that, for good cause, the Industrial Accident Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice and the filing of the claim with the Board. The statute does not give a definition of "good cause" and it is the rule, therefore, that the question of whether or not the circumstances which occasion a delay in filing the notice or claim for compensation constitute good cause is a question of fact to be determined by the court or jury trying the case unless the evidence is of such a conclusive nature that no reasonable grounds for good cause may be said to exist. Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088; Texas Employers Ins. Ass'n v. Little, Tex. Civ.App., 96 S.W.2d 677; Traders & General Ins. Co. v. Jaques, Tex.Civ.App., 131 S.W.2d 133. While it is true that, following his first injury, appellee resumed his employment and continued therein for something like eighteen months before receiving his second injury on October 20, 1937, his testimony indicates that at least at times during that period he was not in

a normal physical condition. He believed, however, that the injury was of a trivial nature and constantly entertained the belief that he would regain his normal physical condition. He testified that this belief was based largely upon the statements of Dr. Brooks, the company's physician who examined him in connection with his first injury and that, until he was examined by Dr. Maxfield, he did not know he had suffered fractures of any of his bones. After receiving the second injury on October 20, 1937, however, he testified that his condition grew steadily worse until December 12, 1937, when he came to the conclusion that he was completely disabled. It seems that he had for some time entertained the thought that he was approaching a condition of total incapacity and, when he ceased his employment on December 12, 1937, he was strongly of the opinion that he would not be able again to perform physical labor. His testimony indicates, however, that, at that time, he had no special reason to attribute his incapacity to either or both of his injuries. A month later, on January 12, 1938, he consulted Dr. Maxfield at Waco and was apprised of the fractures. Dr. Maxfield testified that either of the injuries could have caused appellee's disabled condition, but that, in his opinion, it was caused by the injury of October 20, 1937. We think the testimony warrants the conclusion that, until that time, appellee did not realize he was seriously incapacitated by the injuries received in either of the accidents. The testimony shows that about that time he consulted his attorneys at Waco and they began an investigation as to the status of his claims and within a month after his examination by Dr. Maxfield, the claim upon which this suit is based was filed with the Industrial Accident Board.

■ From the testimony we do not believe it can be said that a condition existed in reference to appellee's delay in filing his claim for compensation which would impel the conclusion that good cause did not exist for the delay. Rather, in our opinion, it reveals ample grounds for the conclusion and finding of the jury that appellee believed, until about the time he filed his claim with the Industrial Accident Board, that his injuries would not disable him and that such belief prevented him from filing his claim for compensation. We think, furthermore, that ample ground is shown for the finding of the jury that a reasonably prudent person, situated as appellee was, would have delayed the filing of his claim. While these grounds may not be abundant, yet they were sufficient to form a basis for the jury's verdict and, it being a question for the jury to decide, we are not authorized to disturb it.

Under its third proposition, in connection with this matter of "good cause", appellant contends that, even if it should be admitted that appellee showed good cause for his delay from March 5, 1936, to December 12, 1937, at that time, according to his own testimony, he knew he was incapacitated and he did not show good cause for failure to file his claim for more than thirty days after December 12, 1937. The record shows that he ceased work altogether on the last mentioned date and that it was his belief at that time that he was approaching total incapacity or perhaps it had already arrived. The fact that for eighteen months, according to his testimony, he did not know the cause of his physical decline, but believed he would ultimately recover and that physicians had told him his injuries were not of a serious nature, was sufficient, we think, to warrant appellee in entertaining doubt even after December 12, 1937, that his incapacity was attributable to either, or a combination of both of his injuries. In fact he testified that he believed until he consulted Dr. Maxfield on January 12, 1938, that practically all, if not, in fact, all of his disability was attributable to his injury of October 20, 1937. We do not think his testimony requires the conclusion that he definitely believed or that any reasonably prudent person would have believed under the circumstances that he was becoming, or was, totally incapacitated at that time as a result of either of the injuries. His conclusion in that respect seems not to have been reached until he was examined by Dr. Maxfield. His claim for compensation was filed not later than February 4, 1938, which was less than thirty days after he had definite reason to believe his condition was the result of the injuries.

Appellant's first contention, which is presented by its first, second and third propositions of law, is, therefore, overruled.

■ Appellant's second contention has reference to the form of special issue No. 31, in which the jury was requested to find whether or not appellee believed his injury of March 5, 1936, would not dis-

able him. The special issue is as follows: "Do you find from a preponderance of the evidence, if any, that the plaintiff, W. S. Fowler, believed until about the time that his claim was filed that his injury or injuries of March 5, A. D. 1936, if any, would not disable him?" The jury answered: "He did so believe." In answer to the following special issues Nos. 32 and 33, they found that such belief prevented appellee from filing his claim and that a reasonably prudent person situated as appellee was would have, for such reasons, so delayed the filing of his claim. The complaint made by appellant of the form of special issue No. 31 is that it was not sufficiently specific; that, instead of asking the jury if such belief on the part of the appellee extended until "about" the time he filed his claim, it should have asked the jury if he so believed until the time he actually did file his claim with the Industrial Accident Board. The basis of this contention is that, by using the word "about" the jury was authorized to find in favor of appellee on the issue although they may have been of the opinion that the time during which appellee believed his injuries would not disable him ended more than thirty days before his claim was filed. We do not find any error in the form of the special issue. If, however, there should be some merit in appellant's contention with reference to it, any vice which it may have contained was removed by the two special issues which followed. In special issue No. 32 the jury was asked if they found that such belief prevented appellee from filing his claim "up and until the time that it was filed." In special issue No. 33 the jury was asked if they found that a reasonably prudent person would, for that reason, delay the filing of his claim "for such length of time." The jury were instructed not to answer the 32nd and 33rd special issues unless they had answered special issue No. 31 in the affirmative. Taking all three of the special issues together, it is plain they refer to one subject and that is the period of time over which appellee entertained the belief as to the extent of his injuries and the termination of that period, the latter of which is specifically brought out in the 32nd and 33rd special issues.

The next contention made by appellant is that in submitting the question of "good cause" the court did not follow the theory pleaded and proved by appellee. It contends that appellee's theory was that his belief that his injuries would not result in his disability was based solely upon what Dr. Brooks had told him, and the court submitted the question in a general manner, that is, he asked the jury generally if appellee believed his injuries of March 5, 1936, would not disable him, instead of limiting the special issue to what appellee believed as a result of what Dr. Brooks had represented to him. It is true that appellee testified his belief in this respect was based largely upon what Dr. Brooks had represented to him, but we think the testimony is sufficient to imply other bases for such belief. He testified that about December 12, 1937, his condition was very bad and that he was forced to cease his labors. He said that he was not a physician and did not know what was causing his disability. The evidence shows also that he consulted Dr. Maxfield at Waco concerning the same matter which indicates that he did not implicitly accept Dr. Brooks' representations. This phase of appellee's case was not based on any alleged fraud or other ground which would require the specific finding here contended for by appellant. In our opinion the special issue properly submitted the question and the record gives no reason for the belief that the jury's verdict in this respect was based upon any issue or question not raised by the pleadings and the evidence.

The fourth contention pertains to the definition given to the jury by the court of "partial incapacity" in connection with special issues Nos. 35, 36 and 37. The definition was as follows: "Partial incapacity, as that term is used in this charge or any special issue given you herein, shall have the following meaning: It shall mean any degree of incapacity to work, less than total incapacity, as defined herein. You are further instructed that a person cannot be totally and partially incapacitated at the same time. If the plaintiff was totally incapacitated to any extent for any period of time, he could not be partially incapacitated for such period of time. Stating it the other way (meaning the same thing) if the plaintiff was partially incapacitated to any extent for any period of time, he could not be totally incapacitated for such period of time." Appellant contends this amounts to a general charge which should not have been given in a case being tried upon special issues. Art. 2189, R.C.S., provides

that in submitting special issues, the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury properly to pass upon and render a verdict on such issues. The term "partial incapacity" is unquestionably a legal term. It has a special significance under our Workmen's Compensation Law and is one the court should always define in his charge to the jury. The purpose of the provision requiring the court to submit explanations and definitions of legal terms is that the jury may be enabled properly to pass upon and render a verdict upon such issues. The court is required not only to give definitions but also explanations of such terms. The definition of material terms used in the compensation law is usually prescribed by statute and if the court is of the opinion that further explanations should be given, it is his duty to give them. He should confine them, however, to explanations and not extend them to the proportions of a general charge. The explanation given by the court in this instance indicates that the court may have been of the opinion that confusion might arise in the minds of the jurors concerning the distinction between the terms "partial" and "total" incapacity. If they had become so confused and found that appellee was partially incapacitated and also totally incapacitated during the same period of time, their verdict would have presented a conflict and a confusing situation would have resulted. The explanation was given in connection with, and as a part of, the definition of the term. It evidently was not considered by the trial judge as being separate therefrom or as being in the nature of a general charge and, under the circumstances in which it was submitted, in our opinion it was not such. Traders & General Ins. Co. v. Holtzclaw, Tex.Civ. App., 111 S.W.2d 759, and authorities there cited.

The remaining contention made by appellant is that the court erred in refusing to give in his charge to the jury a special instruction requested by it to the effect that no inference unfavorable to appellant should be drawn from any supposed breach of duty on its part on account of the circumstances under which appellee ceased working for his employer. This undoubtedly would have been of the nature of a general charge if it had been given in the manner requested by appellant. The occasion for the requested charge arose during the examination of the witness Blaylock in which he testified that he thought the reason given by the Phillips Petroleum Company for discharging appellee was somewhat unreasonable and that it made the witness mad. He said he thought it was a little unfair. No objection was made to the statements of the witness at the time the testimony was given, nor was any request made at that time that the court limit its consideration. The requested instruction was in no sense a definition or explanation of any legal term used in the court's charge and we are unable to agree with appellant that the court erred in refusing to include it in his charge in a case being submitted upon special issues.

We have carefully examined all of the assignments of error and propositions of law submitted by appellant in its brief and, in our opinion, none of them presents reversible error.

The judgment of the court below will be affirmed.

### On Motion for Rehearing.

In its motion for rehearing appellant contends that we erred in the original opinion, in holding, in effect, that the jury was warranted under the testimony in finding that appellee was prevented from filing his claim for compensation for the injury of March 5, 1936, until it was filed, by the belief that his injury of that date would not disable him. It contends with much earnestness that no excuse was shown for the delay from January 12th to February 4, 1938. We held that appellee filed his claim on February 4, 1938, which was twenty three days after he had been examined by Dr. Maxfield at Waco and had been informed by Dr. Maxfield that the bones in the region of his hip and back had been fractured. The holding referred to the formal claim. The record shows that on January 13, 1938, the day after appellee had been so informed by Dr. Maxfield, his attorneys wrote a letter to the Industrial Accident Board in which they notified the Board that appellee sustained the injuries mentioned while engaged in the course of his employment; that he was given medical treatment and attention by his employer's physician; that he had resumed the duties of his employment and continued therein until about the 15th of

December, 1937, at which time he became totally disabled as a result of the injury sustained on March 5, 1936. They stated in the letter that they were checking the files of the Industrial Accident Board for the exact date the accident happened; that they were notifying the company that appellee intended to rely upon the date shown by the files, and asked the Board to furnish them with proper blanks to be filled out by them. As stated in the original opinion, no formal claim had been filed by appellee up to that time, but his employer had filed with the Board a notice of the injury and appellee had been paid by appellant for five weeks disability immediately following the injury. The Board, therefore, had a record of the injury and on January 25, 1938, appellee's attorneys again wrote the Board, asking that the claim of appellee be set for a hearing at the earliest convenient date, again asserting that appellee had been totally disabled since December 15, 1937, from doing any character of work and would be permanently disabled. On January 31, 1938, the Board wrote appellee's attorneys, acknowledging receipt of the letter last mentioned and informing them that the claim for the injury mentioned had been closed by final compensation settlement receipt signed by appellee and filed with the Board April 30, 1936. The letter informed appellee's counsel that in order to reopen the case it would be necessary to file medical evidence signed by a reliable physician, to the effect that the claimant suffered disability beyond the period for which he had been paid compensation, and enclosed two sets of forms for use in filing formal claims. On February 2, 1938, appellee's attorneys notified the Board that they had signed the notice of injury and would file a formal affidavit and physician's statement when the case was set for hearing. On February 4, 1938, the Industrial Accident Board acknowledged receipt of the attorney's letter enclosing formal notice of injury and claim for compensation for the injury of March 5, 1936, and also for the injury of October 20, 1937. Further correspondence between counsel and the Board reveals that on February 9th the physician had been requested to furnish the report and that it was forwarded to the Board February 16, 1938.

From the above facts it will be seen that the day following appellee's examination by Dr. Maxfield, the Board and the employer were notified by his attorneys of his claim for compensation additional to that which he had received immediately after the injury. When the Board informed the attorneys that in order to reopen the claim, it would be necessary to file medical evidence and a formal claim upon the usual blanks being used for that purpose, they had the latter executed and forwarded to the Board within seven or eight days. It appears, therefore, that the process of filing the claim for additional compensation for the injury of March 5, 1936, really extended over a period of some twenty two days. Correspondence with the Board was begun on the day following that upon which appellee was informed of the real facts as now claimed by him and seems to have been conducted with reasonable promptness. Considering these facts, we cannot agree with appellant that the record is devoid of any excuse for the delay in filing formal claim immediately following January 12, 1938, when appellee became informed for the first time that bones in the region of his hip and back had been fractured and that his injuries and disability were probably attributable thereto.

A careful consideration of the motion fails to convince us that the case was not properly disposed of in our original opinion, and the motion will be overruled.