## The FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant,

v.

### Thomas E. AMOS, Appellee.

No. 4328.

Court of Civil Appeals of Texas.

Waco.

April 8, 1965.

Motion for Rehearing Dismissed April 26, 1965.

Vinson, Elkins, Weems & Searls, Sam W. Davis, Jr., Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Royce Till, Harry Burns, Houston, for appellee.

WILSON, Justice.

The carrier in this workmen's compensation case contends there is no evidence claimant was an employee of its assured on September 12, when he alleges he was injured; and the jury finding that he was such employee is contrary to the overwhelming preponderance of the evidence. We affirm.

Pan-American Distributors, Inc. contracted to dismantle an oil refinery. Acadian Engineering Co., appellant's assured, agreed to furnish to Pan-American equipment and labor ("different classifications that Pan-American asked for"), bookkeeping, public liability, property damage and workmen's compensation insurance for the job. Acadia's secretary-treasurer testified the corporation was a "broker for laborers, took care of the insurance for a percentage of the pay and supervised the over-all operation." The policy of Acadia and its parent corporation when Acadia was doing such a job was "to require that all people who come and work" on the premises be placed on Acadia's insurance payroll for its own protection, which was "the only way you can be sure they are covered in order that Acadia have no liability," he testified.

It appears that David Embly orally agreed with Pan-American that he would demolish brick structures and salvage the brick from the refinery. The evidence is conflicting as to his relationship with Pan-American and Acadia. Embly testified he bought the bricks from Pan-American for $10 per thousand and sold them to a brick concern for $35, agreeing with Pan-American's superintendent that he would pay $10 per thousand to have the brick cleaned. Embly recruited fifteen men to clean the brick. They were given a physical examination, which all but Embly passed. "They could not be in there unless they was insured," he testified: "They couldn't get in the gate." All the brick cleaners, including claimant, were on Acadia's payroll, as appellant concedes. Embly testified it was agreed Acadia would deliver the individual payroll checks to him; that he would obtain the workers' endorsement on the checks, cash them, and return the proceeds of the checks to Acadia; that he would pay the workers one cent per brick for cleaning them when collection was made from their resale, which pay "came out of the bricks that were sold." There was other evidence that Embly took the workers to a drive-in where they endorsed and cashed Acadia's weekly checks.

There is evidence that Acadia billed Pan-American for the amount of its payroll, including wages of claimant on a basis of $1.25 per hour, plus a markup for insurance service.

The critical question, as the parties present the issue is—not whether claimant was initially Acadia's employee—but whether he ceased to be such before the evidence shows he was injured on September 12. The insurer's argument is that Acadia had withdrawn completely from the project on September 1, the end of its payroll period, and had made its final billing to Pan-American. There is plausible and persuasive evidence from which appellant's position may be deduced. Acadia's last check to claimant bears date September 4, and the daily report of its foreman from which payroll

checks were computed lists August 30 as the last day of claimant's work.

If Acadia's records in evidence are conclusive, appellant's position must be sustained. But they are not conclusive. Claimant testified he returned for his final pay check after leaving the hospital several days after his injury, and was told it was not ready. When he returned on another day, he and other brick cleaners were given Acadia payroll checks all dated September 4, all cashed simultaneously and all of which cleared Acadia's bank October 1. Acadia's superintendent instructed Embly to take claimant to the hospital on September 12. He testified he had "no independent recollection," basing his testimony as to dates on the payroll records.

Appellant quotes testimony of Pan-American's superintendent that Acadia withdrew from the project with bricks yet left to be cleaned. He also testified, however, "Q. There isn't any question, is there Mr. Gillette, but what at some time near the end of the operation Acadian pulled completely out, and Pan-American continued with some men cleaning brick there? A. No, sir. Q. There isn't any question but what that happened? A. Yes. There is a question." His proof was that toward the end of the job Pan-American started its payroll on some men but Acadia was "paying these men for cleaning this brick; they was making the payroll"; that even after termination Acadia paid for work done by agreement with Embly. Acadia had withdrawn, was his testimony, "but they still had their books and was making the payroll," and "at the time, whatever the date was that he got hurt, Acadian Engineering was paying Jack Embly's employees." They "was supposed to be, because they was still working under his insurance." The comptroller of Acadia's parent company testified, "All I can say is that I can go by the records." Embly testified as to Acadia, "they were still there" when claimant was injured. The points are overruled. See, e. g., Employers Mut. Liability Ins. Co. v. Norman, Tex.Civ. App., 201 S.W.2d 620, writ ref., n. r. e.; Traders & Gen. Ins. Co. v. Frozen Food Express, Tex.Civ.App., 255 S.W.2d 378, writ ref. n. r. e.; Federal Underwriters Exchange v. Walker, Tex.Civ.App., 134 S. W.2d 388; Traders & General Ins. Co. v. Jaques, 131 S.W.2d 133, writ dism. c. j.

Affirmed.