**Anthony H. MALESKI, Appellant,**

v.

**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.**

**No. 608.**

Court of Civil Appeals of Texas, Corpus Christi.

July 29, 1971.

Carl H. Judin, Jr., Thomas P. Earls, McAllen, for appellant.

Adams, Graham, Lewis, Jenkins & Briscoe, Marshall Graham, Harlingen, for appellee.

## OPINION

NYE, Chief Justice.

This is a workmen's compensation case in which the trial court entered summary judgment for the insurance carrier. The injured employee filed his claim with the Industrial Accident Board more than six months after the accident took place. The Board made an award from which the insurance company appealed to the District Court. The employee filed a cross-action to recover the benefits to which he contends that he is entitled under Art. 8306, Vernon's Ann.Civ.St. The district court entered a take-nothing judgment against the employee. It is from that judgment that the employee (hereafter called the plaintiff) has appealed. The law in this type of case is that the plaintiff's right to compensation benefits are barred because of his failure to file his claim within six months from the day of his injury, unless he has good cause for his delay.

We consider and construe the evidence in the light of the familiar rules governing the granting of summary judgments. The affidavits and deposition of the plaintiff show that on July 25, 1968, he sustained personal injuries in the course and scope of his employment with the Rio Paving Company (his employer) in Hidalgo County, Texas. The plaintiff was a truck driver employed to haul caliche for Rio. Late that particular evening he was instructed to clean out his truck, as they were going to haul hot mix the next day. As he was stepping out of the truck, he fell four feet, landing on his right hip and shoulder. Although he experienced some immediate pain and discomfort, he did not go to see a doctor at that time. He continued working without interruption for several months. In November he began experiencing more pain in his hip and leg. In the latter part of November the plaintiff advised his foreman of his injury. Soon afterwards he sought medical attention for the first time. It was at this time in December that he reported his accident to the office girl who worked for Rio.

The office girl questioned the Plaintiff to some degree about how and where the accident took place. She told him "I'll make the report out and turn it in to the insurance company." After the plaintiff had seen the doctor he continued working and talked to the superintendent about his injury. He asked the superintendent if there was any insurance. The superintendent stated that he would talk to Richard Montgomery, the apparent owner or manager of Rio.

The plaintiff continued to work and earned full wages. For about a month the plaintiff received physical therapy treatment every other day. He wore a back brace. In January his doctor referred him to a specialist. On January 24, 1969, the specialist told him to quit working. The plaintiff's injuries had progressed to the point where he was unable to put his foot on the accelerator of his truck. This was the end of the six month period when the plaintiff's claim should have been filed. On January 27, 1969, the plaintiff missed his first day of work as a result of his injury. The next day plaintiff was approached by the insurance company's agent who took a statement from the plaintiff and began to enter into negotiations with him.

The insurance agent asked the plaintiff how and where the accident happened. After plaintiff had given the agent the

written statement as to all of the facts concerning the accident, the agent told plaintiff that he would get $35.00 a week compensation and that all the bills would be paid by the insurance company. He told plaintiff, however, that there would be some delay in the payments because of the physical therapy. The doctor was charging the insurance company a fairly high amount and they (the insurance company), were having an investigation concerning the charges. The agent told the plaintiff it would be sometime before he would get any money.

The plaintiff had never before filed a claim for workmen's compensation. He had never received workmen's compensation insurance. His only other injury (to the hand) was paid by other type of insurance. When he questioned the agent as to why he would receive only $35.00 per week, when he had received $45.00 unemployment compensation benefits, the insurance agent told him that the insurance company only paid $35.00 per week and that that would be the amount that he would receive. Plaintiff testified in his deposition that he relied upon the statements made by the insurance agent. Plaintiff called the agent and talked to him three or four times after the initial contact. According to the plaintiff, the agent for the insurance company continued to represent to the plaintiff that he would be paid compensation. At one time when plaintiff was talking to the agent over the telephone, the agent told plaintiff that he would be sending him some money soon to carry him over. This was in response to a statement made by plaintiff that he was broke and didn't have any money to buy medicine. These telephone conversations took place during the three and one half months period from the initial inquiry by the agent in the latter part of January until plaintiff finally filed his claim in early May. During this time the plaintiff went through a period of hospitalization for surgery and recuperation.

On or about the 1st day of May the insurance agent came to the plaintiff and told him that he was going to write out a check for him. When plaintiff asked for how much, the insurance agent said "$50.-00". Plaintiff said "I got six or seven weeks of compensation at thirty-five. It should be a lot more money", and the adjuster told him "Well, I'm only going to give you $50.00 now". He indicated that he would give him more money at a later time. At the same time, the insurance agent told the plaintiff that if he went to see an attorney or that if an attorney was involved, the insurance company would deny the claim. The plaintiff told the adjuster that he would think it over and let him know. Two days later the plaintiff went to see his attorney who promptly filed his claim with the Industrial Accident Board.

The general rule for determining whether a claimant for workmen's compensation meets the burden of proof to show that there was "good cause" for the delay in filing his claim past the statutory filing period, was laid down by the Supreme Court in Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370 (1948):

"The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion. * * *"

Considering then, the summary judgment evidence most favorably to the

plaintiff, it is clear that the plaintiff believed that the injury he sustained was of a trivial nature from July until December. This was when he first went to see a doctor. If a workman believes that his injuries are not serious but are trivial, such good faith belief can constitute good cause for the delay in the filing of a claim. Texas Employers Ins. Ass'n v. Fowler, 140 S.W.2d 545 (Tex.Civ.App.—Amarillo 1940, wr. ref.); Texas Employers' Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80 (Tex.Com.App., Op. adopted 1940); and Hawkins v. Safety Casualty Co., supra. In the Fowler case, a jury found that the claimant believed that his injury was not serious. This was held to be good cause for a reasonably prudent person to delay the filing of his claim for such length of time until it was then filed.

At the time the plaintiff saw the doctor for the first time, he also reported his injury to his employer. It is reasonable to assume that the plaintiff believed that the office girl filed his claim for him when she said "I'll make the report out and turn it in to the insurance company." In any respect one of the purposes for the filing of a claim is to give such information as to identify the injury or condition which will serve as a basis for an investigation, hearing and determination of the claim. Johnson v. American General Insurance Co., 464 S.W.2d 83 (Tex.Sup.1971). The evidence was that the insurance company knew that the plaintiff was making a claim, because the insurance agent appeared before the plaintiff the very first day after he missed his first day of work. If the claimant believed that his claim had been filed, and because of such belief the claimant delayed the filing of his claim, it has been held that such belief justifies the delay of late filing. See Texas General Indemnity Company v. Youngblood, 466 S. W.2d 329 (Tex.Civ.App.—Fort Worth 1971) and the many cases cited therein.

■ It is also settled law as to the filing of a claim for compensation, that the claimant is under a duty of continuing diligence. If a claim is not filed within the six month period after the accident, the claimant must show proof that good cause existed until the day the claim is actually filed. Texas Casualty Insurance Company v. Beasley, 391 S.W.2d 33 (Tex.Sup.1965). The question of whether or not the claimant used that degree of diligence required, is ordinarily a question of fact. It becomes a question of law only when the evidence admits of no other reasonable conclusion.

After the plaintiff realized the seriousness of his injuries in January, the insurance company represented to the plaintiff that he would be paid $35.00 per week and that his doctor bills would be taken care of. The negotiations continued for several months during which time the plaintiff was operated on. A fact issue exists as to whether an ordinarily reasonable prudent man, relying upon the representations of the insurance agent, in the initial contact and for three or four times thereafter in the three and one half month period of time, was "good cause" for the failure of plaintiff to file his claim until early May. We hold that under the summary judgment facts before us, the plaintiff is entitled to have the jury pass upon this question of fact. See Moronko v. Consolidated Mutual Insurance Co., 435 S.W.2d 846 (Tex.Sup. 1968); Trinity Universal Insurance Co. v. Christian, 289 S.W.2d 656 (Tex.Civ.App. Amarillo 1956); Prince v. Texas Employers' Insurance Association, 466 S.W.2d 642 (Tex.Civ.App.—Eastland 1971) and cases cited therein.

■ Appellee insurance company argues that the trial court was warranted in granting the summary judgment for another reason. Appellee contends that plaintiff's suit alleged that all of the jurisdictional prerequisites had been complied with as set forth in the appendix to his pleadings. In the appendix was the statement that the claim for workmen's compensation had been filed within six months with the Industrial Accident Board "or *there was good cause why such claim was not filed*

*within six (6) months of the date of the injury."* (Emphasis supplied.) The appellee insurance company filed its answer including a special exception directed to the general allegation contained in the appendix. Thereafter, the court entered its order sustaining the exception and granting all parties leave to amend. The plaintiff did not amend. The appellee contends that the order sustaining the exception, in effect struck from the plaintiff's pleadings the allegation "or there was good cause why such claim was not filed within six (6) months of the date of the injury", and left remaining in the allegation "within six (6) months after the alleged cross-plaintiff's injury". Therefore, appellee argues *that since it is admitted that plaintiff did* not file his claim for compensation within the six month period and appellee's sworn denial verifies such fact, this entitles appellee to a judgment as a matter of law. Appellee's contention is persuasive in this regard but because of the facts, it is without merit here.

Appellee's own motion for summary judgment is based upon the original pleadings as filed by plaintiff. It is based on plaintiff's deposition, and upon the ·plaintiff's affidavit. Appellee's own motion for summary judgment states that plaintiff did not comply with Art. 8307, Section 4a, V. A.C.S., in that he did not file his claim for compensation within six months after the alleged injury and in fact did not file the claim until May 9, 1969. Appellee's motion stated: " * * * In this connection, this * * * (appellee) would show that there was no good cause for such failure and that said cause should therefore be dismissed for want of jurisdiction." It is clear to us that the summary judgment case was tried impliedly by the consent of both parties on a question of whether good cause existed for the late filing of the claim with the Industrial Accident Board. Rule 67, Texas Rules of Civil Procedure. The issue of good cause was squarely before the trial court. The trial court did not dismiss the case, but entered a take-nothing judgment which indicates to us that he was ruling on the merits of the claim of "good cause".

Finally, appellee contends that the court was justified in granting the summary judgment because the plaintiff had admitted in his deposition that the only reason he did not file his claim was because he did not know that he was supposed to; that this ignorance of the law does not constitute "good cause" for the late filing of his claim. It is true that in several places in his deposition the plaintiff made statements to the effect that he didn't know that he had to file a claim. However, he qualified these statements later on in his deposition when answering the question: "Q. ' * * * the only reason you didn't file a claim was because you just didn't know you were supposed to?' A. 'I did not know, sir, at all. And, as I say, Danny (the insurance agent) didn't tell me and the girl at the office didn't tell me that I had to.' Q. 'They didn't tell you one thing or another about it?' A. 'What to do, no sir. Nobody said nothing what to do. *She said it was all taken care of* and sent to the insurance company.' Q. ' * * * What did she—' A. *'She said that she had sent the notice or the claim,* the file.' Q. 'I see. And that's all you know about it?' A. 'That's all I know about it, yes, sir.' " (Emphasis supplied.)

■■ If a witness's testimony is inconsistent and contradictory, it is up to a jury to see which of the two statements is true, or the jury may entirely disregard all of the testimony. City of San Antonio v. Gonzales, 304 S.W.2d 429 (Tex.Civ.App. —San Antonio 1957, n. r. e.) The type of statement made here by the plaintiff does not amount to an admission precluding him from having a jury rule on all of the testimony in the case. Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W. 2d 415 (1960).

Judgment of the trial court is reversed and the cause remanded for trial.