MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. F. F. FERCH.

Delivered January 29, 1898.

1. **Practice in Trial Court—Special Issues.**

It is not material error that the jury failed to answer some of the special issues submitted to them, where only immaterial issues are thus left undetermined.

2. **Pleading—Liability—Estoppel.**

Plaintiff's averment in an action for personal injuries, that he was the servant of the defendant, is broad enough to cover the phase of the case presented by evidence that he was hired by the defendant, and, though working at the time upon a job being done by an independent contractor, did not know, as he was not informed by defendant, that he was working for such contractor; and it was not necessary to plead an estoppel against the defendant in order to deny that the plaintiff was working for him at the time of the injury.

3. **Master and Servant—Vice-Principal.**

An engineer to whom alone the duty of inspecting the engine is intrusted acts as a vice-principal, and not as a fellow servant of another employe, in discharging such duty.

4. **Same—Concurring Negligence of Fellow Servant.**

The concurring negligence of a fellow servant does not relieve a master from liability for injuries to a servant caused in part by defective appliances for which the master is responsible.

APPEAL from Grayson. Tried below before Hon. DON A. BLISS.

*Head, Dillard & Muse,* for appellant.

*J. W. Finley* and *C. B. Randell,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This appeal is from a recovery by appellee of $5000 damages for personal injuries.

The special verdict, omitting unimportant findings, establishes the following conclusions:

1. On the 1st day of May, 1893, near Houston, Texas, appellee, while engaged as a member of a pile-driving crew in the employ of appellant in operating a pile driver, received the injuries complained of.

2. While in the act of placing a ring on a pile that was being driven, the hammer fell upon his hands, crushing the right hand, so that the index finger and thumb had to be amputated, and injuring also, though less severely, the left hand.

3. This hammer, which was of immense weight, was lifted and controlled, through what is termed the friction, by means of a steam engine which was then being operated by one Yarboro as engineer, also a member of said crew; but it was the duty of appellee to give signals to the engineer when to start to stop the hammer, and also at the proper time to place the ring on the pile.

4. "All of said gang, including plaintiff, were engaged together at the same place and time, to the common purpose of driving piles, and with the exception of Frank McNeely, who had the immediate control and direction of said entire gang, none of the members thereof had any control or direction of the others, or any authority over them."

5. When injured, appellee was in the employment of appellant, and not of the Southwestern Company (which the evidence tends to show was in charge of the work, doing it for appellant as an independent contractor, though assisted by appellant), and only appellant had power to discharge appellee, who received his pay from appellant, and had no knowledge or notice that the work undertaken was that of the Southwestern Company.

6. The accident was due to a "leaky valve and defective friction and a few minor defects" (on account of which, according to evidence relied on by appellee, the engineer was unable to hold or stop the hammer from falling when signaled by appellee to do so), and the machinery was not reasonably safe for the purpose for which it was being used, which defects were of such nature that they would have been seen by a person of ordinary prudence when he came to use the machinery, and could have been discovered by the use of the care of a person of ordinary prudence, who by the exercise of such care would have had such machinery inspected, and would thereby have discovered the defects.

7. The above defects were sufficiently serious to require a person of ordinary prudence to stop using the machinery while they existed, and no care had been taken to put the machinery in a reasonably safe condition.

8. The leather with which the friction was made, which controlled the fall of the hammer, had been placed upon the drum of the pile driver the day before the accident, by the engineer Yarboro and his fireman.

9. When so placed on the drum the leather was wet, which was known to the engineer and fireman who placed it there (and which, according to the evidence relied on by appellee, had a tendency to make the leather

slip and the hammer drop in spite of the ordinary effort to stop and hold it); the jury finding also that the friction slipped (thereby evidently causing the injury), and that the leather was wet because the cab leaked and the rain blew in on it.

10. At the time appellee was injured he was exercising the care for his own safety that a person of ordinary prudence would have exercised under the particular circumstances, and the failure on his part to exercise care for his safety did not cause or help in the slightest degree to cause his injury.

11. Before he attempted to place the ring on the pile they were driving, appellee, by pulling the bell cord and causing the bell to ring, gave the engineer the signal to stop the hammer, which signal the engineer heard and obeyed, and tried to catch the hammer, the signal having been given in time for him to have done so by exercising the care of a person of ordinary prudence.

12. The hammer came to a stop after the signal was given, and before it caught appellee's hands, but the slipping of the friction started it again.

13. Appellee, by the use of such care as a person of ordinary prudence would have used under the circumstances, could have seen or heard from the position where he was whether or not the hammer had stopped in the usual way in answer to his signal, before he placed his hands on the pile with the ring.

14. The above defects in the pile driver appliances were the sole cause of the injury. (Answer to twenty-fifth issue, in connection with other answers.)

15. Appellee suffered great physical pain and mental anguish by reason of his injury, and still suffers same, and will, with reasonable certainty, continue to do so during his life; having also lost in consequence of his injury three and one-third years time, worth $50 per month, which he was earning when injured. He was then 24 years old, in good health, stout and robust, and has since been and is now able to earn only $4.50 per month, his capacity to labor and earn money in the future being permanently reduced three-fourths. His left hand, as well as the right, was permanently injured, the joints thereof being mashed and rendered stiff.

16. As fair compensation for the loss of time, $2000; as compensation for the decrease of his capacity to labor and earn money in the future, $1000; and for physical pain and mental anguish, past and future, $2000.

These findings we are unable to set aside for want of evidence to support them, and, in connection with the additional conclusions stated in above parentheses, they are consequently adopted as our conclusions of fact; though upon the main issue, which was whether the accident was due to defective appliances or the failure of appellee to give the engineer the signal to stop the hammer, the evidence was decidedly conflicting, with perhaps a preponderance against the verdict.

That appellee when injured was the servant of appellant, and not of the Southwestern Company, was too clear, we think, to admit of any serious controversy.

We further find from the undisputed evidence that it was alone the duty of the engineer to inspect the engine.

*Conclusions of Law.*—Out of about seventy special issues submitted, the jury failed to answer a half dozen or so; in some instances because they could not agree, and in others because they found no evidence upon them. But we are of opinion that the issues so left undetermined were not material, and consequently overrule the assignments of error complaining of the verdict and judgment in that respect.

The charge submitting the issue as to whether appellee was in the employment of appellant or the Southwestern Company when injured is complained of, among other reasons, because it submitted a phase of the case not alleged, as follows: "Or if you believe from the evidence that at the time plaintiff was hurt he had not been informed and had not heard from any source that said work was being done by said Southwestern Company, and that plaintiff did not know at said time that he was working for said Southwestern Company, then, in any of these events, you will find that plaintiff was at the time in the employment of the defendant, and not in the employment of the Southwestern Company," etc.

We are of opinion that the allegation that appellee was the servant of appellant was broad enough to cover this phase of the case, since the relation of master and servant is a mutual one and the creature of contract, and can not be severed by the master alone, without notice to the servant. When injured appellee was engaged in the kind of work he had been accustomed to do for appellant, and had been sent there to do the work by appellant, and if appellant designed to sever for the time being the relation of master and servant previously existing, it should have notified appellee, or at least it should appear that appellee had knowledge of the changed relation, so that consent thereto might be imputed to him. The issue was not one of estoppel to be pleaded, but whether the contract of employment still remained in force or had been changed by mutual consent, express or implied.

It is contended that the special verdict in one of its findings made a case against appellee of patent defects and assumed risks, but we find no such defense alleged.

It is also contended that the same finding made a case of contributory negligence, but if susceptible of such an interpretation, it was expressly negatived by another and distinct finding to the contrary.

It is further contended that the finding of the jury to the effect that the employe (engineer) knew the leather was wet when it was placed on the machine, taken in connection with other findings, makes a case of injuries caused by the negligence of a fellow servant. The engineer tes-

tified: "I had charge of the engine. It was my duty to inspect it. It was nobody's duty to inspect the engine, except me." There was no evidence in conflict with this.

The rule upon this subject is thus laid down in 3 Elliott on Railroads, section 1318: "An employe charged with the duty of keeping machinery and appliances in repair usually acts, in discharging such duty, in the master's place, and is not a mere fellow servant." Besides, as the wet leather was not the only defect found by the jury, the case would at most seem to be one of defective appliances concurring with the negligence of a fellow servant, which would not present a valid defense. 3 Elliott on Railroads, sec. 1306; Railway v. McClain, 80 Texas, 96.

As these conclusions cover the most important questions raised in the brief, we abstain from further discussion of the numerous assignments of error, all of which, however, have been carefully considered; and affirm the judgment.

*Affirmed.*

ON REHEARING.

STEPHENS, ASSOCIATE JUSTICE.—The argument appended to this motion indicates that counsel for appellant misinterpret our conclusions as to the meaning and effect of the special verdict. The whole verdict must be read together, and when so read, we find no conflict between any of its findings. The findings as expressed in our conclusions of fact from 10 to 14, inclusive, when read together, leave no room, we think, for the construction that the judgment rests on a contradictory verdict. See especially the twelfth conclusion, reading: "The hammer came to a stop after the signal was given, and before it caught appellee's hand but the slipping of the friction started it again."

Motion overruled.

*Overruled.*

Writ of error refused.