The judgments of the District Court and Court of Civil Appeals are affirmed.

HAWKINS, J., dissents, and will later file a statement of his views.

---

### CHICAGO, R. I. & G. RY. CO. v. TROUT.
(No. 1686.)

(Court of Civil Appeals of Texas. Amarillo. June 16, 1920. Rehearing Denied Oct. 6, 1920.)

1. **Appeal and error** ⬅➡1050(1)—**Statement of witness that plaintiff was badly injured held not prejudicial.**

Where a witness had described plaintiff's injuries to the jury, his statement in connection with his description of the accident that plaintiff was injured very badly was not prejudicial.

2. **Master and servant** ⬅➡88(7)—**Change of masters without servant's knowledge does not affect liability.**

Where an employer leases or hires his employés to another without their knowledge or acquiescence in the change of relationship, the original employer is not thereby relieved from liability for injuries sustained by the servant in the course of his employment.

3. **Master and servant** ⬅➡284(2) — **Notice of change of employers question of fact.**

Where two railroad corporations were constructing a common system, each one constructing that portion on one side of a state line, the fact that employés of one corporation were sent across the line to work, and that checks in the name of the system over which was stamped the name of the particular corporation were accepted, does not charge an employé as a matter of law with notice of the change of employers so as to relieve the original employer of liability for injuries.

4. **Master and servant** ⬅➡86—**Federal act applies to employment within territory.**

Under federal Employers' Liability Act, § 1 (U. S. Comp. St. § 8658), a railroad employé in a territory is within the provisions of the act, though his employment was not in interstate commerce or in commerce between the territory and a state.

5. **Master and servant** ⬅➡264(1) — **Pleading and proof under law applicable sufficient, though proof under federal act fails.**

Where a petition, seeking recovery under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), was sufficient to authorize recovery independent of that act, the fact that the allegation of employment in interstate commerce was not sustained does not defeat recovery.

6. **Appeal and error** ⬅➡1062(1)—**Issue as to negligence held not so general as to be prejudicial.**

Where the negligence alleged was the insufficient arrangement for holding poles on a car and the negligent rate of speed in view of the roughness of the track and the insecurity of the load, an issue whether the company was negligent in loading and moving the poles and car in question was not so general as to show prejudicial error.

7. **Appeal and error** ⬅➡1062(1)—**Error in special issue cured by instruction.**

The submission of an issue which did not require a finding of the facts from the evidence was cured where the jury, who had taken the oath to render a verdict according to the evidence as required by Rev. St. art. 5213, were charged that the plaintiff must establish the affirmative of that issue by a preponderance of the evidence, or they should answer charge in the negative.

8. **Master and servant** ⬅➡278(6) — **Evidence held to show negligence in loading poles on car and operating work train.**

Evidence that poles on a car in a work train on which a workman was riding when injured were held in place on one side by short standards only, though long ones had been furnished for use after the car was loaded, and that the train was moving at a high speed, considering the roughness of the track, when one of the poles rolled off, held to support a finding of negligence in loading the car and moving the train.

9. **Damages** ⬅➡132(8) — **$5,500 for bruises and permanent injuries to wrists held not excessive.**

A verdict, awarding $5,500 damages to a farmer and laborer 42 years of age, who was knocked from a train and badly bruised and skinned, and who had sprains and fractures of his wrists, which permanently impaired the usefulness of his right hand, is not so excessive as to warrant interference on appeal.

10. **Master and servant** ⬅➡288(4) — **Assumption of risk by employé on work train held not conclusively shown.**

Evidence that an employé, unfamiliar with the particular work, was riding on a work train behind a car insecurely loaded with poles, one of which fell off and knocked him from his car, does not conclusively show that he assumed the risk.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by H. P. Trout against the Chicago, Rock Island & Gulf Railway Company and another. Judgment for plaintiff against the named defendant, and that defendant appeals. Affirmed.

N. H. Lassiter, of Ft. Worth, and C. E. Gustavus, of Amarillo, for appellant.

W. H. Childers, C. B. Reeder, and L. C. Barrett, all of Amarillo, for appellee.

BOYCE, J. This is the second appeal of this case. See Chicago, Rock Island & Gulf Railway Co. v. Trout, 152 S. W. 1137; Id., 206 S. W. 829; Id., 208 S. W. 656.

H. P. Trout sued the Chicago, Rock Island & Gulf Railway Company and the Chicago, Rock Island & El Paso Railway Company, in the district court of Potter county, for damages, alleged to have resulted from an injury sustained by him in the territory of New Mexico, in 1910. It was alleged that the defendants were at said time part of the Rock Island System of Railroads, and were operating a line of railroad from Amarillo, Tex., to Tucumcari, N. M., as partners; that the part of the road in New Mexico was operated in the name of the Chicago, Rock Island & El Paso Railway Company, and that part in Texas was operated in the name of the Chicago, Rock Island & Gulf Railway Company; that at the time of the injury plaintiff was in the employ of the defendants; that he was employed in Texas by the Chicago, Rock Island & Gulf Railway Company, and while working under said employment was sent by said company across the line into New Mexico, and put to work on the said road, operated at said time either by the Tucumcari & Memphis Railway Company or the Chicago, Rock Island & El Paso Railway Company; that plaintiff had no knowledge as to any change of masters in the change of the location of his work from Texas to New Mexico, but throughout his services was working under his employment by the Chicago, Rock Island & Gulf Railway Company; that while engaged in the work which he was set to do he was riding on a car in a train operated on said line of railway in New Mexico; that in front of said car in said train was another car, loaded with telegraph poles; that one of said poles fell from its place on said car, and was caused to swing around so that it struck the plaintiff and knocked him off the train, causing the injury, for which he sued. It was expressly alleged that the suit was brought under the federal Employers' Liability Act of April 22, 1908 (U. S. Comp. St. §§ 8657–8665). The defendant denied the allegations of partnership, and specially pleaded that plaintiff was not at the time of the injury in their employ; that the said line of road in New Mexico at the date of the injury was owned and con-

trolled by the Tucumcari & Memphis Railroad Company, and plaintiff was in the service of said company, in doing the work at the time and place of his injury; that said line of road was then in course of construction, and plaintiff, with others, was sent out on the train to load onto the cars some telegraph poles, which were scattered along said line, and that he was injured while engaged in such work. The defendants also pleaded assumed risk, contributory negligence, and, further, that if there was any negligence from which the injury resulted, such negligence was the act of a fellow servant, and that under the laws of the territory of New Mexico, which were specially pleaded, the defendants would not be liable for injuries resulting from the negligence of such fellow servant.

A peremptory instruction was given for the Chicago, Rock Island & El Paso Railway Company. The case was submitted on special issues, and the jury found in response thereto that the Chicago, Rock Island & Gulf Railway Company employed the plaintiff in Texas, and sent him to work at the place where he received the injury; that he was at such time working under a contract of employment with the said Chicago, Rock Island & Gulf Railway Company; that the company having charge thereof was guilty of negligence in the manner of loading the poles and moving the car in question at the time of the injury; that the plaintiff was not guilty of contributory negligence; his damages were assessed at the sum of $5,500. Judgment was entered for the plaintiff for the sum against the said Chicago, Rock Island & Gulf Railway Company, and the appeal is from this judgment.

The evidence shows that the injury occurred about the time of the completion of the extension of the lines of the Rock Island System from Amarillo to Tucumcari. That part of the road in Texas was owned and was being constructed by the appellant, the Chicago, Rock Island & Gulf Railway Company; that part of the road in New Mexico was owned and being constructed by the Tucumcari & Memphis Railway Company, and was conveyed by said company to the Chicago, Rock Island & El Paso Railway Company on May 9, 1910, three days after plaintiff's injury. J. M. Stark had charge of the construction of the road both in Texas and New Mexico, and used the men employed interchangeably, account for work done in New Mexico being charged against the Tucumcari & Memphis Railway Company, and that for work done in Texas against the Chicago, Rock Island & Gulf Railway Company. Plaintiff was employed by one Pancost, a foreman working under Stark. He was employed in Texas, and worked on the road for several days in Texas, and the evidence is sufficient to warrant the conclusion that he was employed by the Chicago, Rock Island & Gulf Railway Company, and that was the understanding between him and the foreman employing him.

The gang of men under this foreman were moved once in Texas after plaintiff was employed, and a few days late Pancost and the men working under him, including plaintiff, were moved to New Mexico. Plaintiff throughout his employment was working under Pancost as foreman, and doing the same character of work. The work trains ran across the line between Texas and New Mexico, without any change of employés, and the entire work was being done as one piece of work. On the day of the injury a work train took on board Pancost and his men, including plaintiff, and started along the road, gathering up telegraph poles, which were scattered along said road at distances of about 150 yards apart. Pancost and his men were loading the poles under the general superintendence of another man, who had charge of the construction of the telegraph line. The poles were loaded on a flat car, being held on by standards on the sides. The standards, on the side of the car opposite from which they were being loaded were about 5 feet high, but those on the side from which the poles were loaded were from one to 2½ feet high, these short standards being used so that the men could lift the poles from the ground over them. As they were loaded they were piled up against the high standards, and sloped down to the lower standards. Long standards were provided, so that when loading should be complete they would replace the short standards, and the poles distributed evenly on the car. After loading a pole the men would get on the cars, and would ride to the next pole to be loaded, and so on. In doing this work plaintiff was riding on the car behind the car being loaded. After they had loaded all the poles except one or two that were about a mile or two distant, the train was proceeding to such place for the purpose of loading these remaining poles. After the train had traveled some half mile and had attained a speed of from 15 to 35 miles per hour, according to the testimony of different witnesses, one of the poles rolled off the car over the short standards, and one end, striking the ground, was swung around so as to strike the plaintiff, knocking him off the car and injuring him, as more fully stated later.

[1] The first assignment complains of the admission of testimony of the witness J. B. Smith, who testified that he was present at the time of the injury and that the pole swung around and knocked the plaintiff off the car, "injuring him very badly," objection being to the statement just quoted. We do not think there is any reversible error in the admission of the testimony. The witness described fully the nature of the injuries sustained by plaintiff, and there could be no misunderstanding on the part of the jury as to the fact that the general conclusion was based on the specific details of the injury, about which the witness had testified.

[2] The second, third, seventh, eighth, twelfth and thirteenth assignments are based on the general contention that the evidence conclusively shows that the plaintiff was not, at the time of the injury, in the employ of the defendant, but was the servant of the Tucumcari & Memphis Railway Company. We overrule these assignments for the reason that the evidence is sufficient to warrant the finding that the contract of employment was between the Chicago, Rock Island & Gulf Railway Company and the plaintiff, and plaintiff did not consent or acquiesce in any substitution of the Tucumcari & Memphis Railway Company as his master, and there was nothing in the circumstances of his transfer to New Mexico to charge him, as a matter of law, with knowledge that there had been a change in his master. The relation of master and servant is the result of contract; if the master lends or hires his servant to another to work under such other party's direction, the servant may, during such service, become the servant of such other party if such arrangement is made with his consent or acquiescence; but if the servant is not informed of the change of masters, and there is nothing in the facts to charge him with such knowledge, then during such service he remains the servant of his original employer. M., K. & T. Railway Co. v. Ferch, 36 S. W. 487; M., K. & T. Railway Co. v. Ferch, 18 Tex. Civ. App. 46, 44 S. W. 317; Walker v. El Paso Electric Railway Co., 118 S. W. 554; Id., 103 Tex. 259, 126 S. W. 262; Texas Refining Co. v. Alexander, 202 S. W. 134; Hutt v. Philadelphia Railway Co., 252 U. S. ——, 40 Sup. Ct. 359, 64 L. Ed. ——; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480; Labatt on Master and Servant (2d Ed.) § 52, p. 174; R. C. L. vol. 18, pp. 493, 494.

[3] The defendant relies on the fact, that the plaintiff was paid for his services by checks drawn by the Tucumcari & Memphis Railway Company, to charge him with knowledge of the change of masters. We do not think this would be conclusive in any event. Dillingham v. Crank, 87 Tex. 104, 27 S. W. 94. The checks bore the name of the Rock Island Lines, over which were stamped the words, "Tucumcari & Memphis Railway Company," though one of the checks acknowledged receipt of payment from the Chicago, Rock Island & Pacific Railway Company. It is not conclusively shown that plaintiff received either one of these two checks before the injury. The first one was dated May 2d, and the other one was dated after the injury; nor does it appear that plaintiff paid any particular attention to the names on the checks; at most, the question of notice to the plaintiff of change of masters would be one of fact.

[4] The fourth assignment complains of the overruling of appellant's objection to the court's charge, the objection being that the court should charge the jury to find in

favor of the defendant because "the evidence wholly fails to show that plaintiff was an employé, engaged in interstate commerce, at the time any injuries were received by him, and under the pleadings in this case plaintiff in no event is entitled to any recovery." It appears that the line of road from Amarillo to Tucumcari was not formally opened for traffic until about May 9, though there is evidence tending to show that it had been handling some little local business for a while before the formal opening for traffic. We are inclined to the opinion that the evidence is insufficient to show that "plaintiff was an employé, engaged in interstate commerce." However, the liability of the defendant under the federal act did not depend on a finding that the plaintiff or the road on which he was injured was engaged in interstate commerce, or commerce between the states and a territory. The second section of the act of April 22, 1908, being section 8658, U. S. Compiled Statutes, reads in part as follows:

"Every common carrier by railroad in the territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in any of said jurisdictions," etc.

The objection assumed that the liability of the defendant depended wholly on the fact that the plaintiff was engaged in interstate commerce. On account of the provisions of that portion of the act just quoted, we think the objection was not well taken.

[5] We are also of the opinion that the assignment should be overruled for still another reason. The pleading of liability under the federal act would not defeat recovery entirely, though the plaintiff failed to establish the facts necessary to bring the case within such law, if the facts pleaded and proven, eliminating the claim for recovery under the federal act, were sufficient to warrant recovery under the law properly applicable to the question of liability. The plaintiff pleaded all the facts necessary to make a case of liability under the federal act, and prayed for general relief; these same facts would be sufficient to state a good cause of action, independent of the federal act, if the allegation of facts necessary to bring the case within the provisions of such law were not sustained. We think the plaintiff would have been entitled to recover under the law properly applicable, if the facts warranted it and liability was established, although he may have failed to bring his case within the terms of the federal act. Wabash Railway Co. v. Hayes, 234 U. S. 86, 34 Sup. Ct. 729, 58 L. Ed. 1226; C., R. I. & G. Ry. Co. v. Cosio, 182 S. W. 83; Jones v. Railway, 149 Ky. 566, 149 S. W. 951. For the same reasons we overrule the sixth assignment.

[6] The fifth assignment complains of the manner of submission of the third issue.

That part of the issue in question is as follows: "Was the company having charge thereof guilty of negligence in loading and moving of the poles and car in question?" The plaintiff objected to the submission of the issue, because "the jury are not limited in any manner to the negligence alleged and to the testimony in support of the allegations, but are left free and unrestricted to make a finding of negligence neither alleged nor proven." The negligence alleged was, in substance, that the arrangement for holding the poles on the car in a moving train was insufficient, that the track was rough, and that the car was transported at a negligent rate of speed, in view of the fact that the track was rough and the poles insecurely loaded. We do not think there was any harmful error in the manner of the submission of the issue in the particulars complained of. While the submission of the issue is rather general, it does confine the jury in general terms to the specific elements of negligence alleged, to wit, the manner of the loading of the poles and the movement of the train with the poles loaded as they were on the car. These were about the only elements of negligence that could have been suggested, and in does not seem at all probable that the jury could have considered anything else. If there was any evidence of any negligence not falling within these allegations, and the terms of the submission, it has not been called to our attention. These same observations will apply to the suggestion that the charge did not confine the jury to the determination of the question from the evidence introduced.

[7] Besides this, the jury must have understood that the answers were to be made from the evidence. They were under oath to render a verdict "according to * * * the evidence submitted to you under the rulings of the court." R. S. art. 5213. The jury were also told in the charge, on the burden of proof, that the burden of proof was on the plaintiff to establish the affirmative of this issue by a preponderance of the evidence, and that if they did not find that the affirmative of such issue was proven by a preponderance of the evidence, then the answer thereto should be in the negative. The issue was one easily understood, and it was not at all likely that the jury could have departed from the pleading and the proof in their consideration thereof.

[8] The ninth assignment complains that the affirmative answer of the jury to the third issue referred to in the foregoing assignment is unsupported by the evidence. We think the evidence warrants the jury in the finding. This may have been the proper and only practical method of loading poles, and there may have been little danger in it, where the distance from the poles was such that the train would not acquire any considerable speed in going from stop to stop, so that

there would not be the swaying and racking of the load that would be expected to result from rapid movement of the train, and the danger would be slight if a pole should fall off. The evidence shows that it was not the custom to transport the load·in this condition over long distances; for long standards were furnished to replace short ones when loading was complete, and before the car started on its journey. The train, in going the 1 or 2 miles necessary to reach the other poles that were to be loaded on this occasion, might acquire the same speed, and be subject to the same character of jolting and swaying that would be incurred in a transportation for longer distances. So the jury could have fairly found that those controlling the work should have either caused the ·train to proceed more slowly, or have made a more secure arrangement of the load before subjecting it to the stress of rapid transportation over a new and somewhat rough road.

[9] The tenth assignment complains that the verdict is excessive. There is evidence to the effect that the plaintiff's head and face were badly bruised and skinned, and that his neck was injured in some way so that it remained painful up to the time of the trial; that he was bruised in the bowels, which, however, was only temporary; that both wrists were severely sprained; that the left wrist remained slightly stiff; that in addition to the sprain some of the small bones in the right wrist were broken so that the plaintiff was unable to straighten the fingers of his right hand, and the usefulness of this hand was considerably impaired and the injury permanent; that the plaintiff still suffers pain when using his hands, and his ability to labor is materially lessened. The plaintiff was 42 years of age at the time of the injury, and was a farmer and laborer. We are not prepared to say that we ought to interfere with the verdict as being excessive, and overrule the assignment.

[10] The eleventh assignment asserts that the evidence conclusively shows that plaintiff assumed the risk of the injury received. We do not think so. The plaintiff was unfamiliar with this particular kind of work, and was not informed as to the intentions of those in charge of the work as to the movement of the train. He, with others, handled the poles from the ground, while other men on the car placed them. He may not necessarily have known of the danger under the circumstances, or be held to have anticipated that the train would be handled in such manner as to render the transportation of the poles dangerous to those on the train.

We have found no error assigned which in our opinion requires a reversal of the case, and the judgment will be affirmed.