## TRADERS & GENERAL INS. CO. v. WOOD et al.

### No. 5265.

Court of Civil Appeals of Texas. Amarillo.

Feb. 24, 1941.

Rehearing Denied March 17, 1941.

Lightfoot, Robertson & Gano, of Fort Worth, for appellant.

L. D. Ratliff, Jr., and O. B. Ratliff, both of Spur, for appellees.

STOKES, Justice.

The controversy involved in this suit originated in a joint claim for compensation under the Workmen's Compensation Act, Art. 8306, et seq., R.C.S., 1925, filed with the Industrial Accident Board by appellee, Minnie L. Wood, against R. W. McKinney and L. L. Massey for compensation for the death of her son, Charles Adolphus Wood. The American Agency Lloyds was the compensation insurance carrier for R. W. McKinney, and appellant, Traders & General Insurance Company, carried the compensation insurance for L. L. Massey. The Industrial Accident Board exonerated appellant from any liability but awarded compensation to appellee of $9.60 per week for 360 weeks against American Agency Lloyds. The American Agency Lloyds duly filed its notice of dissatisfaction with the award, and on March 4, 1939, filed Cause No. 791 in the district court of Kent County in which it prayed that the award be set aside and held for naught. On March 8, 1939, appellee filed Cause No. 792 in the district court of Kent County against American Agency Lloyds and Traders & General Insurance Company, as joint defendants, in

which she alleged that her deceased son, Charles Adolphus Wood, was the employee of either R. W. McKinney or L. L. Massey, and that one or the other of the insurance carriers was liable to her for compensation as provided by the Workmen's Compensation Act, and prayed for judgment against the defendant shown by the testimony upon the trial to be liable therefor.

Appellant filed a plea in abatement involving questions not necessary here to mention and after the dilatory questions were disposed of the court ordered the two cases consolidated; directed that the parties replead, and upon the new pleadings the consolidated case was tried before the court and a jury on March 11, 1940. The case was submitted to the jury upon special issues and in answer thereto the jury found that on September 21, 1938, Charles Adolphus Wood sustained personal injuries in a truck collision in Kent County which resulted in his death; that at the time of receiving his injuries he was an employee of L. L. Massey and that the injuries were received in the course of his employment. They further found that Charles Adolphus Wood was not an employee of R. W. McKinney, and that he did not receive the injuries in the due course of any employment with R. W. McKinney. They found that appellee was the sole and exclusive beneficiary of Charles Adolphus Wood and that manifest hardship and injustice would result if the compensation should not be paid in a lump sum.

Based upon the verdict of the jury the court rendered judgment in favor of appellee against appellant, Traders & General Insurance Company, for the sum of $2,333.76, to be paid in a lump sum, and that appellee recover nothing against American Agency Lloyds.

Appellant duly presented its motion for a new trial, which was overruled by the court, and it duly excepted, gave notice of appeal, and has perfected an appeal to this court. A large number of assignments of error and propositions of law are presented and urged by appellant, but in our opinion the case is controlled by one issue which involves the question of whether or not Charles Adolphus Wood was the employee of appellant's insured, L. L. Massey, at the time he received the injuries which resulted in his death.

No objection was made by appellee to the judgment entered by the court denying her a recovery against American Agency Lloyds and no appeal has been prosecuted therefrom by her. We are not concerned, therefore, with the question of whether or not appellee was entitled to a judgment against American Agency Lloyds.

As we have stated, the jury found that, at the time he received the injuries which caused his death, Charles Adolphus Wood was an employee of L. L. Massey and that his injuries were sustained while he was in the course of his employment with Massey. If there is any evidence shown by the record to support the jury's findings in these respects, the judgment must be affirmed; otherwise, it cannot be permitted to stand. It becomes necessary, therefore, to review and analyze the testimony.

Art. 8309, Sec. 1, of the statute defines an employee as meaning every person in the service of another under any contract of hire, expressed or implied, oral or written. It is held by our courts that in order to be an employee the relation of master and servant must exist in the sense that one party has the right of ultimate control over the other. Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S. W.2d 449. In order to recover against appellant, it was necessary, therefore, for appellee to show that such relationship existed between her deceased son and L. L. Massey whose compensation insurance was carried by appellant. The record shows that R. W. McKinney had procured from the Texas Highway Department a contract for the construction of a road between Spur and Jayton lying principally in Kent County. It is not shown that Massey was a party to this contract nor that he had anything whatever to do with the construction of the road in so far as that contract was concerned. Massey had for a number of years been engaged in the business of furnishing trucks to contractors for road construction and had formerly owned a number of them. In order properly to prosecute the construction work it was necessary that McKinney have a large number of trucks to convey the base material, which was composed of caliche, from the caliche pit to the places on the road where it was needed. In order to procure these trucks McKinney entered into a contract with Massey which provided that Massey, as lessor, would rent or lease to McKinney trucks and trailers for the purpose of

hauling the base material and water as covered by the contract between McKinney and the State Highway Department. The compensation to be paid to Massey for the lease of the trucks was $1 per hour for each hour a truck or trailer was so used. The lease contract was in writing and it provided that the lessee, McKinney, should pay the drivers of the trucks 40¢ per hour for each hour a truck was so used. It was further provided in the contract that if Massey should be unable to furnish sufficient trucks and trailers and water tanks owned by him to supply the requirements of the agreement, he should hire the necessary trucks, trailers and water tanks and should be responsible for maintaining, repairing or operating them, except for the wages of the drivers, the same as if the trucks, trailers and water tanks were owned by him. The contract further provided that the lessee should be the employer of the drivers of the trucks leased but that Massey should, as agent of the lessee, attend to the hiring of such drivers as may be necessary for McKinney to comply with his contract with the Highway Department. It was further provided that Massey should act as the agent of McKinney in the supervision and use of the trucks, but that McKinney should have complete control of the time, place and method of hauling covered by the lease agreement.

The record shows that Massey did not own any trucks when this lease agreement was made and it was necessary, therefore, for him to lease or hire the necessary trucks from other parties. He arranged with the owners of some of these trucks to drive one of the trucks owned by them and procure drivers for others that were satisfactory to Massey. To quote or even analyze in detail the testimony of the witnesses who testified concerning the manner and method used in the operation of the trucks would extend this opinion to unreasonable lengths. Suffice it to say that a number of the witnesses testified that Massey gave them instructions concerning the manner in which the trucks should be operated and others made general statements to the effect that Massey was on the construction job a number of times and instructed them about the matter of operating the trucks. Some of the truck drivers who so testified did not attempt to detail the instructions given to them by Massey, but Massey, himself, and some of the other witnesses testified that Massey instructed all of the drivers, after they had begun work on the construction job, to be careful with the trucks and not to drive fast. None of the witnesses testified, however, that Massey gave any instructions other than these precautionary warnings concerning the matter of speed and the care with which the trucks should be handled and operated. The record shows that C. A. Dittmore was a son-in-law of Massey and had been connected with Massey in various contracts concerning road construction for many years; that Dittmore had formerly owned some forty or more trucks which he leased to road construction contractors for the same purpose for which Massey leased the trucks to McKinney in this instance; that Dittmore was familiar with road construction, and the manner and method by which trucks hauling road material should be operated, and it is undisputed that Dittmore was employed by McKinney as truck foreman on the work here involved; that McKinney paid his salary and that he did not draw any salary or wages from Massey for his work as such. Dittmore testified also that one Joe Shawver was superintendent on the construction job for McKinney and that Shawver was Dittmore's immediate superior, but that neither Shawver nor McKinney had anything to do with the trucks except through him. There is no testimony in the record by any witness to the effect that Massey gave any instructions concerning the trucks or had anything whatever to do with them after he leased the trucks, hired the drivers, and placed them on the construction job for McKinney except those of a precautionary nature concerning the speed and care in their operation. Massey testified that he went by the construction job about once a month to collect the lease money due him by McKinney for the trucks and some of the other witnesses testified that Massey was on the job or "came by the job" about every two weeks. In the matter of directing the manner in which the trucks should be loaded with the caliche at the pit and conveying it to the places in the road where it was needed, the manner in which it should be unloaded and the places on the road where it should be unloaded were all directed by Dittmore and other employees of R. W. McKinney. It is not shown, or even intimated by the testimony that Massey was a partner or otherwise connected with McKinney or that he was in any sense responsible for any of the obligations as-

sumed under the contract of construction which McKinney made with the Highway Department. We find no conflict in the testimony concerning the matter of who exercised the power of control in directing the ends sought to be accomplished by the trucks and drivers and the means and details of their accomplishment. The employees of McKinney directed what should be done and how it should be done. It is not a case of Massey's being an independent contractor, obligated to furnish to McKinney on the road construction job certain materials and receiving pay therefor in proportion to the amount so furnished, but he is shown to be only the lessor to McKinney of the trucks which McKinney needed in order to haul the base material to the places on the road where it was needed. The mere fact that Massey cautioned the drivers of the trucks to be careful with them and not to drive at a high rate of speed is of no significance in respect to the matter of exercising power or control over the truck drivers or directing the means by which it was sought to accomplish the purposes contemplated in the road construction contract which McKinney had made with the Highway Department. It is quite reasonable to assume that Massey, having hired the trucks from other parties, felt responsible for their safety and, for that reason, he cautioned the drivers to be careful with them and not to drive at a high rate of speed. That would not indicate, however, that he was assuming any responsibility in so far as moving the road material was concerned, nor that he had any right or authority to do so.

We do not find anything in all of the testimony that would warrant the conclusion that, in loading the caliche on the trucks, removing it from the caliche pits or beds to the places on the highway where it was needed, and in unloading it at such places, was directed, supervised or in any manner controlled by Massey or anyone authorized by him to do so. No witness testified that Massey had any authority to assume such power and, as we interpret the testimony, no conflict is revealed between the witnesses on this point. As we have already said, the witnesses who appellee contends gave testimony to the effect that Massey did exercise such power and control only made the general statement that he instructed them and gave them directions. The only witnesses who attempted to explain such instructions testified that the instructions given by Massey pertained to the speed and manner in which the trucks should be handled.

██ Many definitions of the relationship of master and servant as applied to the compensation statutes have been given by our courts and they all converge into the accurate definition approved by the Commission of Appeals in Shannon v. Western Indemnity Co., 257 S.W. 522, 523. In that case Judge German quoted Street on Personal Injuries as follows: "No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the means and details of its accomplishment; 'not only what shall be done, but how it shall be done.' "

This general conception of the meaning of our statute is acquiesced in by both parties to this appeal and we are of the opinion that the record in this case wholly fails to reveal any basis in the testimony for the finding of the jury to the effect that Charles Adolphus Wood was the employee of L. L. Massey when he received the injuries which resulted in his death. Southern Surety Co. v. Shoemake, Tex.Com.App., 24 S.W.2d 7; Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449; Manning v. Texas Employers' Ins. Ass'n, Tex. Civ.App., 67 S.W.2d 389; Tanneberger v. Massey, Tex.Civ.App., 124 S.W.2d 949; Hartford Accident & Indemnity Co. v. Addison, 5 Cir., 93 F.2d 627; Ellis v. Associated Industries Ins. Corp., 5 Cir., 24 F.2d 809; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S.Ct. 252, 53 L.Ed. 480.

It was shown by the testimony that Charles Adolphus Wood, together with some of the other truck drivers employed on the Kent County job, were not only employed by Massey for the work in Kent County, but that immediately prior to engaging in the work on the Kent County job, under the directions of Massey, they operated the trucks for him at other places, one at Tehuacana and another at Ralls, both of which were far removed from the Kent County job and that they were instructed by Massey to leave those places and go to the Kent County construction job and work there. It was further shown in this connection that C. A. Dittmore had been in charge of other work as the agent or superintendent of Massey and appellee contends with much force that, since it is

not shown by the testimony that Charles Adolphus Wood knew anything about the lease contract between McKinney and Massey, or any arrangement between them to the effect that in employing the drivers, Massey was acting as agent of McKinney, Massey could not escape liability as a master in so far as Wood was concerned nor transfer the same to McKinney by entering into a contract with McKinney containing terms and provisions that, in employing the truck drivers, Massey was acting only as the agent of McKinney. As an abstract proposition of law, it must be conceded that appellee is correct in this assertion. Traders & General Ins. Co. v. Jaques, Tex. Civ.App., 131 S.W.2d 133. The record shows, however, that Wood worked on the construction job as truck driver for some three months; that all of the truck drivers were paid twice each week by checks of R. W. McKinney. The checks were signed by McKinney and delivered to the truck drivers by McKinney's employee. As we have already said, it was also shown that Massey was not present except about once every two weeks when he went by to collect the lease money owing to him by McKinney for the use of his trucks. On these occasions he gave no instructions concerning the work, as far as the testimony shows, other than to caution some of the drivers about the speed and care they should observe in handling the trucks. The man in charge of the caliche pit and rock crusher located there was an employee of McKinney. Dittmore, while he had theretofore been connected with Massey, was, on this job, the truck foreman for McKinney and all of the other employees who had anything to do with directing the work of loading, removing and placing the caliche on the road and delivering McKinney's checks to the truck drivers for their wages were employees of McKinney and, as far as the record shows, none of them except Dittmore had ever worked for Massey. It was not shown that, as a matter of fact, Wood did not know he was an employee of, and working for, McKinney nor that he did not, as a matter of fact, agree to or acquiesce therein. This phase of the matter is revealed only by the circumstances testified to by the witnesses. While it is true that the circumstance of McKinney's paying Wood's salary and Wood accepting his salary in the form of checks from, and signed by, McKinney is not conclusive on the question of Wood's knowledge as to the identity of his employer, yet it is a strong circumstance to be considered along with others of like import and we think it is particularly significant in this case because of the frequency with which Wood's wages were thus paid. The further circumstance that all of the work engaged in by Wood during the entire period was directed and controlled by employees of McKinney, and the fact that Massey exercised no control whatever over the work in which the truck drivers were engaged, must be taken into consideration. In the absence of evidence to the contrary, all of these circumstances taken together impel the conclusion that Wood knew he was not working for Massey at the time he was injured and establish at least an implied consent on his part which made him, as a matter of law, employee of R. W. McKinney. Tenneberger v. Massey, supra, 124 S.W.2d 949.

Dittmore testified, without dispute, that he had the power to discharge the drivers of the trucks at any time their services were not satisfactory. It was shown by the testimony that all of the truck drivers were listed on the payroll of McKinney and that each time their wages were paid to them they signed McKinney's payroll. Moreover, it was shown, without dispute, that, during the period of time involved, Massey had only two men on his payroll and they were employees in his office at Austin; that none of the truck drivers on the Kent County job were reported to appellant by Massey as being his employees covered by appellant's insurance policy and no premiums were paid by him to appellant for compensation insurance on them. It was not shown, nor even suggested, that Massey fraudulently or purposely concealed from Wood the fact that he was acting as the agent of McKinney in employing the truck drivers and we find no basis in the testimony for the findings of the jury to the effect that, at the time of his injury and death, Charles Adolphus Wood was actually the employee of L. L. Massey or that he was acting in the course of employment with Massey at the time of his injury and death. It is our opinion, furthermore, that the circumstances do not warrant the conclusion that Wood did not know he was working for McKinney nor that he did not agree to, or acquiesce in, such employment.

■ At the close of the testimony appellant presented and urged a motion for a peremptory instruction directing the jury to return a verdict in its favor which was refused by the court. In our opinion the

motion was well taken and in overruling it the court below committed error for which the judgment must be reversed. The record indicates that the case was fully developed and it is not conceived that any benefit could be derived from another trial. The judgment of the court below will, therefore, be reversed and judgment here rendered that appellee take nothing by her suit against appellant and that appellant go hence without day and recover its costs.

### On Motion for Rehearing.

In a motion for rehearing appellee contends that we erred in holding that L. L. Massey could, under the law, transfer his employees, including Charles Adolphus Wood, to R. L. McKinney without the knowledge, consent or acquiescence of such employees. She bases the contention upon the assertion that the truck drivers were employed by, and working for, Massey at Tehuacana and Ralls under a contract of hire with him and that, while so employed, he transferred them to the road construction work of McKinney in Kent County. She asserts that, if they were working on the Kent County job for McKinney it was without their knowledge, consent or acquiescence, without which Massey had no legal right to transfer their employment. In support of her contention, she cites us to the case of Chicago, R. I. & G. R. Co. v. Trout, Tex.Civ.App., 224 S.W. 472.

Such is not the effect of our holding in the original opinion. The facts in the instant case are by no means the same as those revealed by the opinion in the Trout case. There, the Chicago, Rock Island & Gulf Railway Company contended that the injured employee was, at the time of his injury, employed by the Tucumcari & Memphis Railway Company and that the latter company was his master. The facts showed that the contract of employment was between the Chicago, Rock Island & Gulf Railway Company and the plaintiff, whereas in the instant case it is undisputed that Massey, acting as agent for McKinney under a contract to that effect, employed Charles Adolphus Wood to work for McKinney on the Kent County road job. Appellee insists that Wood did not know Massey was acting as agent for McKinney in making the contract of employment but,

as stated in our original opinion, there is no testimony in the record to that effect. It is only inferred by appellee from the fact that some of the other truck drivers testified that they did not know they were working for McKinney but thought they were working for Massey.

Moreover, the testimony in the instant case does not warrant the inference that the employees were transferred from the employment of Massey to that of McKinney as were the employees involved in the Trout case. The original contract of employment was made by Massey, acting as agent for McKinney. According to that contract the employees were to engage in the construction work on the road in Kent County which McKinney had contracted with the State Highway Department to construct. After the contract of employment was made, it developed that the Kent County job was not ready for them and would not be for some time. Massey then put them to work on the Tehuacana and Ralls jobs until McKinney was ready to begin work on the road construction job. When McKinney was prepared to begin the work in Kent County, Massey directed them to go to that county and begin the work he had originally employed them to perform for McKinney. Thus it will be seen that instead of transferring their employment to McKinney after having them engaged on the Tehuacana and Ralls jobs, the truck drivers were sent to Kent County to perform the services which they had originally been employed to perform. The work which Massey gave them at Tehuacana and Ralls, according to the testimony, only occupied the short space of time during which McKinney was making his preparations to begin work in Kent County. The circumstances under which the employees worked at the different locations are entirely different from those under which the employees worked for the railway company in the Trout case and do not warrant the conclusion that they were transferred without their knowledge or consent in the manner in which the opinion in the cited case reveals the employees of the railway company were transferred from the work in Texas to that being prosecuted by the Tucumcari & Memphis Railway Company in the State of New Mexico.

The motion will be overruled.