is, therefore, general as distinguished from special.

Under the rules stated, especially the Warren, Ennox, Johnston, and Baugh cases, supra, the proof fails to measure up to the requirements of the law as would authorize the conclusion that the tracks were made by only the Veazey shoes. But conceding—for the sake of argument—that the tracks were shown to have been made by the Veazey shoes, there yet remains to be established the fact that appellant was the wearer of those shoes when the tracks were made. Appellant did not own the shoes. No one saw him wearing those shoes. The State was under the burden, then, of establishing, at least, that he could have worn them.

We have searched this record in vain for any testimony showing, or tending to show, the size of shoe worn, or capable of being worn, by the appellant. Whether or not the Veazey shoes were capable of being worn by the appellant is left as a matter of inference only. Since appellant was under arrest and in custody, the State appears to have been in position to have obtained a pair of appellant's shoes or to know the size of shoe worn by him, and thus to have supplied this important detail. The fact that the State did not do so is a circumstance against it.

It is true that the tennis shoes were introduced in evidence and were therefore before the jury. We would have no right to presume that appellant could have worn them. By no hypothesis of reasoning can it be said that the State has shown that appellant was the wearer of the shoes which made the tracks.

What has been said touching the similarity of the foot-prints to the Veazey shoes as being general rather than specific applies equally to the tire tracks. There is nothing to indicate that the tire track was made exclusively by a Lee tire on the Craig automobile.

The State's case stands primarily upon proof identifying appellant as the maker of the tracks found at the Hunt home. This the State has failed to do by legal and competent evidence measuring up to the requirements of the law.

Whether or not appellant was the perpetrator of the horrible crime depicted by this record is not for us to say. We only know that in this land of ours the life and liberty of no man shall be exacted or taken from him as a penalty for crime, until his guilt has been first established in accordance with law. Such is the right guaranteed every citizen. It is the duty and responsibility of the courts to enforce and preserve that right. It is in the performance of that duty and in full consciousness of that responsibility we reach the conclusions herein expressed.

 The evidence being insufficient to authorize the conviction, the judgment of the trial court is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### TEXAS EMPLOYERS' INS. ASS'N v. NEELY.

#### No. 5689.

Court of Civil Appeals of Texas. Amarillo.

Sept. 24, 1945.

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellant.

Geo. S. Berry and F. V. Hinson, both of Lubbock, for appellee.

BOYCE, Justice.

This is a workman's compensation case. W. W. Neely, appellee, brought the suit against the Texas Employers' Insurance Association, appellant. The parties will hereinafter be given their trial court desig-

nations. Judgment was rendered awarding plaintiff compensation at the rate of $20 per week for 22 weeks and at the rate of $13.20 per week for an additional 128 weeks. This judgment was based on jury findings that plaintiff was injured in the course of his employment with the Forrest Lumber Company; that the injury resulted in total incapacity for work for a period of 22 weeks and subsequent partial incapacity permanently; that the plaintiff was not an employe of the Bell Plumbing Company at the time of the injury; that plaintiff's wage earning capacity had been reduced in the sum of $22 per week; that the injury was confined to the hand and to the arm below the elbow.

Defendant's first contention is that the court erred in overruling its motions for an instructed verdict and for judgment notwithstanding the verdict, because the evidence, as a matter of law, showed the plaintiff to be a special or borrowed employe of Bell Plumbing Company at the time of the injury. There was no pleading or proof that Bell Plumbing Company was insured by the defendant.

Plaintiff went to work as a carpenter for Forrest Lumber Company at Lubbock about June 6, 1944. A substantial part of the labor done by him was upon individually owned houses. He usually went to work at eight o'clock in the morning and quit at six o'clock in the afternoon. He was paid at the rate of $1.25 per hour. The injury occurred on the morning of Monday, July 17, 1944, while plaintiff was working at the home of J. T. O'Neal in Lubbock.

On the Friday before the accident, Mrs. O'Neal telephoned Bell Plumbing Company requesting its services for the repair of some leaking water pipes in the O'Neal home. The plumbing company's superintendent inspected the premises and informed Mrs. O'Neal that she would have to get a carpenter to remove the ceiling beneath the leak in order that the plumber might get at the pipes.

Shortly before noon on this same Friday, the Forrest Lumber Company's bookkeeper, Morrow, instructed plaintiff to quit the job he was doing and go out to the O'Neal house where some plumbers "were stalled." Morrow did not know what had to be done but told plaintiff that Mrs. O'Neal or the plumbers would instruct him what to do. After lunch plaintiff went to the O'Neal house, arriving a few minutes before the plumbers came. Mrs. O'Neal stated that she could show plaintiff what to do and pointed out to him the location of the leak. No additional directions were given by Mrs. O'Neal. When the plumber and his helper came, the plumber told plaintiff what he wanted done. Pursuant to the plumber's instructions, plaintiff cut a hole in the ceiling beneath the leak and, upon inspection of the pipes, the plumber informed Mrs. O'Neal that new pipes should be installed. Mrs. O'Neal answered that she did not want to authorize the work without consulting her husband, who was out of town and might not return until the next evening. It was thereupon decided to postpone further work until Monday. At this time Mrs. O'Neal and the plumber pointed out to plaintiff certain work which was to be done in order that the premises would be ready for the plumbers on Monday morning. Plaintiff returned to the lumber yard about three o'clock that afternoon and resumed the job he had been doing when sent to the O'Neal home. Plaintiff testified that as far as he was concerned the O'Neal job was completed when he left the O'Neal home.

At the time plaintiff went to the O'Neal house he did not know either of the O'Neals. He did not know the plumber or his helper or by whom they were employed.

On Saturday morning plaintiff worked at the lumber yard. At the time he received his pay check from the lumber company, which included payment for the work he had done at the O'Neal home Friday, he was told by Mr. Cole, manager of the lumber yard, that Cole had talked with Mr. O'Neal who had quite a bit of work to be done the next week, that Cole wanted plaintiff to do the work, that plaintiff was to be sure to be at the O'Neal house by eight o'clock Monday morning because the plumbers would be waiting on him, and that they and Mrs. O'Neal would tell him what to do.

Plaintiff reported to the O'Neal home on Monday morning prior to the plumber's arrival. At Mrs. O'Neal's direction he commenced tearing out a partition for the purpose of enlarging the breakfast room. Discovery of a sewer pipe in the partition caused Mrs. O'Neal to decide to discontinue that work and plaintiff then undertook to restore the partition wall. At this point the plumber arrived, reported to Mrs. O'Neal that he had a floor furnace, and instructed Neely to cut a hole in the floor for the installation of the furnace. When

the hole had been cut, the plumber directed plaintiff to enlarge the opening which had been made in the ceiling on Friday by removing the entire plank from which a piece had been cut and the plank on each side of the opening. While doing this work plaintiff fell and sustained the injury for which he is here claiming compensation.

There was no express contract of employment between plaintiff and the Bell Plumbing Company. The record does not disclose the conversations between Mrs. O'Neal and the lumber company and between Mr. O'Neal and the lumber company. It does not disclose any contact between representatives of the plumbing company and the lumber company other than the conversations between plaintiff and the plumber at the O'Neal house. It does not disclose any dealings between the O'Neals and the plumbing company subsequent to the initial request for the repair of leaking pipes.

It is settled that an employe, though in the general employment of one person, may be temporarily lent to another. Steele v. Wells, Tex.Civ.App., 134 S.W.2d 377, writ of error refused; Magnolia Petroleum Co. v. Francis, Tex.Civ.App., 169 S.W.2d 286, writ of error refused. Whether there has been a lending depends upon an agreement between the general employer and the borrowing employer. Liberty Mut. Ins. Co. v. Boggs, Tex.Civ. App., 66 S.W.2d 787, writ of error dismissed; Maryland Casualty Co. v. Stewart, Tex.Civ.App., 164 S.W.2d 800, writ of error refused for want of merit; Hartford Accident & Indemnity Co. v. Addison, 5 Cir., 93 F.2d 627. The responsible employer is the one in whom the right of control is lodged at the time of the accident; the right to direct, not merely the end sought to be accomplished, but as well the means and details of its accomplishment; not only what is to be done but how it shall be done. King v. Galloway, Tex.Com. App., 284 S.W. 942; Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522; Smith Bros., Inc. v. O'Bryan, Tex. Com.App., 94 S.W.2d 145. The relation of employer and employe is contractual; when the employe does not know of the lending agreement he must be charged with knowledge of sufficient facts to show his acquiescence in the arrangement. Missouri, K. & T. Ry. Co. of Texas v. Ferch, Tex. Civ.App., 44 S.W. 317, writ of error refused; Chicago, R. I. & G. Ry. Co. v. Trout, Tex.Civ.App., 224 S.W. 472, writ of error dismissed; Traders & General Ins. Co. v. Jaques, Tex.Civ.App., 131 S.W.2d 133, writ of error dismissed.

It is our opinion that the evidence fails to conclusively establish a contract between Forrest Lumber Company and Bell Plumbing Company by which plaintiff became the special or borrowed employe of the latter. On both occasions when plaintiff was sent to the O'Neal home, he was told that Mrs. O'Neal or the plumbers would instruct him "what to do." The evidence shows that the plumber did tell plaintiff what to do and when to do it in relation to the work done for the plumber's benefit, but it does not show that the plumber undertook to direct plaintiff in the details of his work. The orders given plaintiff by the lumber company and by the plumber, coupled with the conversation between Mrs. O'Neal and the plumbing company's superintendent, at most, provide facts from which a contract by which the lumber company had surrendered the right to control the means and details of the accomplishment of plaintiff's work might be inferred. We cannot say, however, that an inference that no contract existed would be unreasonable. Hartford Accident & Indemnity Co. v. Addison, supra.

If a contract existed between the lumber company and the plumbing company for the temporary transfer of plaintiff's services to the plumbing company, plaintiff's knowledge of such contract is not conclusively shown. The conversations and orders to plaintiff, above mentioned, considered in connection with his testimony of the lumber company's right to discharge him and the fact that he was paid by the lumber company, do not conclusively establish his acquiescence in the transfer, but raise an issue of fact.

The motions for a peremptory instruction and for a judgment notwithstanding the verdict were therefore properly overruled.

Defendant complains that the burden of proof was improperly placed on it in Special Issue No. 21, involving the defensive theory that plaintiff was an employe of the Bell Plumbing Company.

Special Issue No. 21 is as follows:

"Do you find from a preponderance of the evidence that in the work plaintiff was doing at the time of the accident he was

subject to the right of control of the Bell Plumbing Company to the exclusion of the right of control of the Forrest Lumber Company in directing both what should be done and how it should be done? Answer 'yes' or 'no' as you find."

■ The affirmative form in which the issue was submitted, coupled with the instruction to answer from a preponderance of the evidence, placed on the defendant the burden of proving that the plaintiff was employed by Bell Plumbing Company at the time of the injury. This was reversible error. Texas Reciprocal Ins. Ass'n v. Stadler, 140 Tex. 96, 166 S.W.2d 121.

The defendant assigns as error the entry of the judgment based on jury findings of a temporary total and a permanent partial incapacity for work in the face of pleadings, evidence, and a jury finding limiting the injury to the arm.

Although the plaintiff's petition contains the pleader's conclusion that there was incapacity for work, the facts alleged show that the injury was confined to the right arm. Plaintiff's deposition taken before the trial, his testimony, and that of the expert witnesses on the trial confined the injury to the right arm. The jury found that the arm only was affected. No issues involving the degree and duration of the injury to plaintiff's arm were submitted. The defendant objected to the court's charge on account of the failure to submit such issues.

■ Section 12 of Article 8306, Vernon's Annotated Civil Statutes, contains a schedule of injuries to specific members of the body and fixes the amount of compensation to be paid for the injuries listed. The schedule of payments controls regardless of the effect of the injury on the capacity for work. Texas Employers' Ins. Ass'n v. Thrash, Tex.Civ.App., 136 S.W.2d 905, writ of error dismissed; Petroleum Casualty Co. v. Seale, Tex.Com.App., 13 S.W.2d 364. The findings that plaintiff was totally incapacitated for work temporarily and partially incapacitated permanently are immaterial. In order for him to recover for the loss of the use of his arm, it was necessary that he establish the extent and duration of the loss of use. Issues on these facts were a part of his case and not defensive in nature. Defendant's objection to the charge for failure to submit the issues was sufficient. Rule 279,

Texas Rules of Civil Procedure. This assignment is sustained.

Another of defendant's contentions is that the jury findings relative to average weekly wages do not afford a basis for awarding compensation in a sum exceeding $7 per week. This contention is grounded on the jury finding that plaintiff did not work substantially the whole of the year preceding the injury in the employment in which he was working at the time of the injury, the assertion that the jury finding that other employes did work substantially the whole of the year preceding the injury in the same or similar employment is without support in the evidence, and the conclusion that the use of the finding of a wage fair and just to the parties is unwarranted because the wage rate based upon the earnings of other employes was not eliminated.

Plaintiff testified that he was acquainted with the customary wages paid carpenters in the vicinity of Lubbock during the year preceding his injury and he stated what those wages were. He did not testify that he knew of any carpenter who had worked in that vicinity for substantially the whole of the preceding year. He did not testify that no carpenter had worked in that vicinity for the whole of the preceding year. He was silent on both of these points and there is no other pertinent testimony in the record.

■■ It was incumbent upon plaintiff to show that his wages could not be computed under Section 1, first Subdivision 2 of Article 8309, Vernon's Annotated Civil Statutes, before Subdivision 3 became applicable. American Employers' Ins. Co. v. Singleton, Tex.Com.App., 24 S.W.2d 26; Traders & General Ins. Co. v. Milliken, Tex.Civ.App., 110 S.W.2d 108. This plaintiff failed to do. We therefore sustain this assignment of error.

It is unnecessary to decide whether the assignments hereinafter referred to present reversible error, as the matters complained of will probably not occur on another trial. We do, however, discuss them briefly.

■ Whether plaintiff was covered by compensation insurance is determined by the law, and the opinion of the manager of the lumber company that plaintiff was covered by insurance was inadmissible.

■ Payment of compensation in a lump sum is not authorized when the injury is confined to a specific member of

the body. In such a case pleading and evidence of plaintiff's impoverished condition should not be presented to the jury.

The judgment is reversed, and the case remanded for another trial.