**TEXAS EMPLOYERS' INS. ASS'N v. GODWIN.**

No. 13672.

Court of Civil Appeals of Texas. Dallas.

March 15, 1946.

Rehearing Denied April 19, 1946.

594

Robertson, Leachman, Payne, Gardere & Lancaster and Fred T. Porter, all of Dallas, for appellant.

White & Yarborough and W. E. Johnson, all of Dallas, for appellee.

BOND, Chief Justice.

This is a compensation suit for alleged specific injuries to (1) third or distal phalange of appellee's second finger on his right hand; (2) to the second finger; (3) to the hand; and (4) to the arm. W. R. Godwin was the employe, Robert E. McKee the employer, and Texas Employers' Insurance Association the insurance carrier.

Art. 8306, sec. 12, Workmen's Compensation Act, provides compensation for injury to or loss of the third or distal phalange of the second finger, one-third of the loss of the finger; for the loss of the finger, "sixty per cent of the average weekly wage during thirty weeks"; for the loss of hand, "sixty per cent of the average weekly wage during one hundred and fifty weeks"; and for the loss of the arm at or above the elbow, "sixty per cent of the average weekly wage during two hundred weeks." In the enumerated cases, the law provides permanent, partial incapacity resulting from injury to any such member of the body, and for injuries extended to such other members, resulting in their loss of use, is equivalent to and draws the same compensation as the loss of that member; and where the employe sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation for the injury which produces the longest period of incapacity; but where the concurrent loss or loss of the use thereof of more than one member, compensation for specific injuries shall be cumulative as to time and not concurrent.

On November 3, 1943, appellee W. R. Godwin, in the course of his employment, sustained a cut or wound only to the third or distal phalange of the second finger of his right hand, which injury he claims thereafter involved the nerves extending to the finger, hand and arm, causing pain and loss of use of such members. Pertinent to this appeal, appellee alleged: "* * *; that pain radiates up and down plaintiff's second finger and into his right hand and through his right arm; that plaintiff will never have the full use of his said finger and right hand again; that plaintiff sustained a severe shock to his nerves and entire nervous system, as a result of said injuries received at the time and on the occasion in question; that as a natural result of each and all of said injuries and resulting injuries and the effects flowing therefrom that plaintiff's second finger on his right hand, as well as his right hand and arm, were totally incapacitated, and plaintiff suffered total loss of use thereof from the date on which he sustained said injuries on or about November 3, 1943, for a period of thirty weeks, for which he is entitled to recover compensation from the defendant at the rate of $20.00 per week, in the sum of $600.00; that following immediately after plaintiff's total loss of use of his said finger, and total loss of use and total incapacity to his right hand and arm, plaintiff sustained and will sustain a fifty

percent temporary partial loss of use of his right arm and hand and second finger thereof for a period of forty weeks, for which he is entitled to recover compensation of and from Texas Employers' Insurance Association at the rate of $10.23 per week, in the sum of $409.20; that plaintiff is entitled to recover from defendant herein the total sum of One Thousand Nine and 20/100 Dollars ($1,009.20)." The aforesaid allegations, in effect, were repeated more than once in the petition; and in the prayer appellee sought judgment specifically for the sum of $1,009.20 and for general relief. In answer to plaintiff's petition, the defendant insurance carrier, aside from general denial and exceptions not pertinent here, specifically alleged, and in the alternative, "That if there was any loss of use by the plaintiff of his right hand or arm, which is not admitted but denied, then that such loss of use was due solely to the loss of use of the third or distal phalange of the middle finger of said right hand, or was due solely to the loss of use of said middle finger of said right hand."

In the course of trial, the defendant conceded that Godwin received injury to the third or distal phalange of the middle or second finger of his right hand, and moved the court to render judgment in favor of plaintiff for $200 compensation due for the loss of use of that member. The trial court, against defendant's objection, overruled the motion and submitted issues of loss of use of the other members, the hand and arm, resulting from the loss of use of the phalange, permanent and temporary, total and partial incapacity.

In response to special issues, the jury found that Godwin suffered injury on November 3, 1943, to the third phalange of the second finger of his right hand, resulting in permanent total loss of use of the phalange; that such injury to the phalange resulted on date of the infliction of the injury (1) in permanent total loss of use of his second finger; (2) resulted in permanent total loss of use of his right hand for 43 weeks commencing on November 3, 1943, and, at the end of the 43 weeks, such loss of use of the hand was and will be 40 percent total and perma-

nent; (3) in temporary total loss of use of his arm for 43 weeks from date of injury, and will not be partial after that time. The evidence being undisputed that Godwin's compensation average weekly wage was $20, no question on that issue was submitted; and it will be seen that no question was submitted on a controversial issue as to whether the injury was limited to the member actually cut; hence there were no findings that the loss of use of his right hand or arm resulted from injury, or that the injury to the phalange was not solely confined to that member, or that such injury to the phalange extended to the hand and arm.

On plaintiff's motion, timely filed, the trial court awarded compensation for (1) temporary total loss of use of his right arm for 30 weeks at $20 per week, beginning November 3, 1943, the sum of $600, with interest; (2) for 40 percent permanent total loss of use of his right hand for 150 weeks, cumulative as to time, at $8 per week, beginning June 1, 1944, the sum of $1,200, with interest; and (3) denied any compensation for loss of use of his finger or third phalange of the finger. Thus making a total award of $1,800, with accumulated interest,—one-third to plaintiff's attorneys.

The facts relating to the cut or wound to appellee's third or distal phalange of his finger are that the cut was superficial, extending from the side of the end of the finger diagonally across to near the joint; that it did not involve the nail, bone or joint; that it did not require stitches to close the wound, and soon completely healed, leaving no visible scar tissue; that, in treatment of the wound, the attending physicians merely cut hanging rough edges of the cut cleansed and bandaged it with gauze. There was some evidence offered by the injured employe that the cut or wound resulted in swelling to the finger, and from such cut pain extended to the hand and arm. We think the finding of permanent total loss of use of the phalange is indeed dubious—from appellee's own testimony:

"Q. Where did you cut it, Mr. Godwin? A. Right across there (indicating).

"Q. Right across the face of it—is that where you cut it? A. Right across there.

"Q. It didn't leave any scar there? A. Sometimes when it swells up, when I use it, you can see the scar.

"Q. But you cannot see any scar now, can you? A. I don't know, I haven't got my glasses on. I don't know whether there is a scar there or not.

"Q. How far down from the nail did it come toward the joint? A. Came back down to there.

"Q. Just about the joint? A. Just about the joint.

"Q. When you went to Dr. Tubb, he didn't sew it up, did he? A. No, sir.

"Q. He just bandaged it up? A. Yes, sir."

Then, too, the evidence raises doubt as to resulting pain extending to the hand and arm to warrant recovery for loss of use of such members, either temporary or permanent, total or partial. His attending physicians denied such result. However, conceding that the evidence raises the issue whether the injury to appellee's phalange extended to his hand and arm through the nerves, resulting in loss of use of such members, in absence of pleadings, or findings of the jury that such injury did extend to such members, resulting in incapacity, compensation can not be awarded for the loss of use thereof. To recover for the loss or incapacity of a specific member of the body, for which specific compensation is allowed, the injured employe must plead, prove, and secure a finding that the injury to one member extended to and produced injury to the other member or members, causing loss of use of such other members. Manifestly, injury to or loss of use of a phalange, or a finger, or a hand, or an arm, would be detrimental to the natural use of the other members not involved in the injury. It could hardly be said that injury to, or loss of any such member, would not have any effect, or any "loss of use" of the other members.

Appellant timely objected to the court's charge, for the reason that there was no issue submitted to the jury as to whether or not the injury to appellee's finger affected his right hand or arm, or whether such injury was confined solely to his finger; and, in line with the exception, requested submission of special issues (similar in nature and form), as affects the finger, hand and arm: (1) "Has the plaintiff proved by a preponderance of the evidence that his injury was not confined solely to the third or distal phalange of the middle finger of his right hand?"; (2) "* * * to his finger?"; (3) "* * * to his hand?"; and (4) "* * * to his arm?". The trial court overruled the exceptions, refused to submit the proffered special issues, and submitted special issues involving the "loss of use" of appellee's phalange, finger, hand, and arm, each inquiring whether the injury suffered by W. R. Godwin on November 3, 1943: "Issue 1 * * * resulted in any loss of use of the right arm"; "Issue 10 * * * resulted in any loss of use of the right hand"; "Issue 19 * * * resulted in any loss of use of the second finger of the right hand"; and "Issue 28 * * * resulted in any loss of use of the third phalange of the second finger of the right hand?" To each of these questions the jury answered "Yes." Then, following each of the aforesaid issues, the court also submitted corollary issues, making inquiry as to whether the "loss of use" of the phalange, finger, hand and arm were permanent, temporary, total, partial, and the percentage of loss of use and duration thereof. It will be seen that the "loss of use" of all said members, as submitted and found by the jury, resulted, if at all, solely from injury of appellee's phalange; that no inquiry was made as to whether the injury to the phalange extended to and resulted in injury to or loss of use of the other members.

In Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463, 464, the injured employe sued for a specific injury to his leg and also sought general injury to his body, alleging that the general injury was produced by the injury to his right leg, and the injury to his right leg caused other parts of his body to be affected, which produced total and permanent incapacity. The Supreme Court, speaking through Justice Sharp, held: "Where injury results to a particular mem-

ber of the body, compensation for the loss of which is specifically provided by statute, the liability of the insurer is limited to that amount, even though the loss of or injury to that particular member actually results in total permanent incapacity of the employee to labor. But an employee is not precluded from recovering for total incapacity if he alleges and proves that the injury to the particular member also extended to and affected other portions of his body, or impaired his general health to such an extent as to totally and permanently incapacitate him. If this question is determined in favor of claimant, then he is entitled to recover under Section 10 of Article 8306." (Citing numerous authorities).

In Texas Employers' Ins. Ass'n v. Stephenson, Tex.Civ.App., 178 S.W.2d 883, 885, the injured employe suffered injury to his right foot and to his nervous system. The jury did not answer special issue reading: "Do you find from a preponderance of the evidence that John Edward Miles' total incapacity, if any you have found, is due solely to injuries and loss of use of his right leg below the hip?" The Waco Court of Appeals held: "In our opinion, the jury's answer to special issue No. 4, to the effect that plaintiff's injuries did not extend to and affect other portions of his body than his right foot, was not equivalent to a finding that such injuries did not extend to or affect other portions of plaintiff's body than his right foot. The issue as framed required the jury to find from the evidence that both the injuries and the effect thereof extended to other portions of plaintiff's body than his right foot before such issue could be answered in the affirmative. If the issue had been submitted to the jury as to whether the injuries affected other portions of plaintiff's body than his right foot, it might, conceivably, have answered said issue in the affirmative although it believed from the evidence that the injury found by it did not extend to any other portion of plaintiff's body than his right foot."

In Travelers Ins. Co. v. Davis et al., Tex.Civ.App., 191 S.W.2d 880, 882, the injured employe sustained an injury to her fingers and hand and, as claimed, such injuries extended beyond the injured members to other parts of her body. The insurance carrier, as here, pled special denial that the employe had lost the total use of her right hand and that her injuries and incapacities were confined to the specific injuries of one finger and the loss of two phalanges of another finger. During course of trial it was conceded, similar here, that the injured employe sustained the loss of the third or ring finger of her right hand and the distal phalange and three-fourths of the second or middle phalange of the middle or second finger of the right hand, entitling her to 60 percent of her wage rate for a period of 38½ weeks. On findings of the jury that the injured employe suffered disability to labor for 26 weeks from date of injury; that she sustained injury to her hand other than loss of two fingers that resulted in partial loss of her right hand; and that the partial loss of use of her right hand did result solely from the loss of the two fingers, and not from some other cause not attributable to the accident, the trial court entered judgment for the loss of her finger and for 26 weeks disability. The Beaumont Court of Civil Appeals, in considering the appeal, struck from the judgment the award allowing compensation for 26 weeks disability as the result of the loss of use of the hand and finger actually injured, saying: "Under the compensation law, an injured employee is entitled to compensation for specified numbers of weeks for certain specific injuries set out in the statute. The number of weeks of compensation thus allowed for a specific injury is fixed by such statute without regard to the length of time the injured employee may be disabled from work as the result of such specific injuries. Thus an injured employee might be awarded compensation for 100 weeks under a specific injury and return to work within one month thereafter. The injury resulting in compensation may be a specific injury, or several specific injuries, or a general injury. If the disability extends beyond the injured member to other parts of the workman's body generally, then an injury to a member of the workman's body will become a general injury and will be compensated as such. An injured work-

man however can not be compensated for the same injury both as a specific and as a general injury. See Texas Employers Ins. Ass'n v. Neely, Tex.Civ.App., 189 S.W.2d 626; Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463; Petroleum Casualty Co. v. Seale, Tex. Com.App., 13 S.W.2d 364; Article 8306, Revised Civil Statutes of Texas."

■ So, in the case at bar, the issues as to whether the injury to appellee's phalange of his finger involved the nerves to the third finger, right hand and arm, resulted in injuries to these members or was confined solely to the phalange, were ultimate and controlling affirmative issues to recover for such members; and, where appellee sought recovery for such damage or injury, he had the burden to secure a finding on the issues. Consolidated Underwriters v. Langley, supra. The issues submitted by the trial court evidently do not embody such resulting injuries, viz: "Do you find from a preponderance of the evidence that the injury suffered by W. R. Godwin on November 3, 1943, resulted in any loss of use of the right arm?" to which the jury answered "Yes." Similar questions refer to the hand, finger and phalange, and to whether the loss of use of such members respectively was permanent, total, etc.

The failure of appellee to secure findings in keeping with appellant's exceptions to the charge and the special issues submitted, does not entitle him to recover compensation for such members, other than the phalange actually injured; and for such failure the issues are waived. Rule 279, T.R.P.C. Hence the judgment awarding compensation for "loss of use" of the hand and arm should be reversed and the judgment reformed, striking therefrom such award; and, as reformed, here rendered as should have been rendered by the court below (Rule 434) in favor of appellee in the sum of $200 for the permanent total loss of use of the third or distal phalange of the second finger, as found by the jury.

■ If, perchance, it could be reasonably said that the several questions submitted and the findings of the jury that the injury to the phalange of appellee's finger extended to his hand and arm, resulting in loss of use thereof, then the question arises, (assignments and points of error properly raising the contention) : Is there any pleading or evidence to sustain the corollary findings that loss of use of the arm was temporary and total for a period of 43 weeks from date of injury, and, at the end of such period such loss would be 40 percent permanent-partial; and that the loss of use of appellee's arm for a period of 43 weeks, also commencing from date of injury, was temporary-total; as to warrant the judgment for $600 (30 weeks at $20 per week) for the loss of the arm, and for $1,200 (150 weeks at 40 percent of $20 per week) for loss of the hand, commencing after the award for the loss of the arm? We think the total compensation of $1,800 finds no support in the record.

■ It will be seen from appellee's pleadings that he suffered temporary partial incapacity to both his right arm and hand, for which he sought compensation for a period of 30 weeks at the rate of $20 per week, beginning on November 3, 1943; and for 50 percent temporary partial loss of use of both his right arm and hand for a period of 40 weeks following immediately after the total incapacity of his arm and hand. The judgment of the trial court extends the time and amount sought from 40 weeks to 150 weeks for such loss of the hand to begin after the 30 weeks of temporary total loss of use of the arm. In other words, appellee sought $1,009.20 compensation for the limited period of disability of both the hand and arm, whilst the judgment awarded him $1,800 for an entirely different period of disability. Manifestly, the injured employe cannot recover for a longer period of disability than that which he pleads.

■ The trial court, over appellant's objections, submitted issues for findings as to whether appellee suffered permanent partial loss of use of his hand and arm, and, on affirmative findings, entered the judgment. We think the charge should have followed the pleadings. If loss of

use of the hand and arm resulted from the same injury, and to the same extent, and began at the same time, as found by the jury, then the compensation allowed by statute could only be for the longest period of incapacity to such members. The injuries, if any, to the hand and to the arm were concurrent injuries resulting in concurrent incapacities; thus, if any compensation be allowed for either the hand or arm, it should be only for temporary loss of use of the hand for such period of time, not to exceed the time pleaded by the injured employe.

Appellant assigns error in the trial court's action sustaining, over its objection, appellee's challenge for cause the juror Surls, because, forsooth, he knew the attorney representing the insurance carrier, which attorney had at some time in the past represented the wife of the juror and, he thought, probably was representing her at this time. The juror on voir dire testified under oath that his acquaintance with the attorney and the legal services rendered to his wife, would have no effect on his verdict, would not cause him to be biased or prejudiced in any way in the case, and he could give both plaintiff and defendant a fair trial on the evidence without regard to who the attorneys for the parties might be. While we think the juror was not disqualified to sit on the jury, and that the court erred in sustaining appellee's challenge for cause, yet, because of our disposition of this appeal, we deem it unnecessary to decide as to whether such error would cause a reversal of the case.

For reasons above stated, the judgment of the court below is reversed and here rendered, striking from the judgment the award for loss of use of appellee's hand and arm; and decree appellee $200 for the permanent total loss of the use of the phalange of the second finger of his right hand, with 6 percent interest thereon from date of injury until paid; one-third thereof is awarded to appellee's attorneys, White & Yarborough; all costs in the court below are taxed against appellant, and all costs on appeal taxed against appellee.

Reversed and rendered.