### TEXAS EMPLOYERS' INS. ASS'N v. POTTER.

#### No. 6063.

Court of Civil Appeals of Texas. Amarillo.
May 22, 1950.

Rehearing Denied June 26, 1950.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellant.

Merchant, Fitzjarrald & Pope, Amarillo, for appellee.

STOKES, Justice.

This is a workmen's compensation case, filed by the appellee, H. L. Potter, against the appellant, Texas Employers' Insurance Association, to recover compensation for personal injuries received by appellee while employed by W. J. and John J. Moran and Moran Brothers, Inc., for whom appellant carried the workmen's compensation insurance. The employers were engaged in drilling oil and gas wells in Hutchinson County. The record shows that on January 18, 1949, appellee was lifting a slip from around a drill pipe in the operation of drilling a well; that the slip was a heavy object, weighing 80 or 90 pounds and was used to wedge the pipe and prevent it from falling down into the well; that, while appellee was lifting the slip, a co-employee on the other side of the pipe jerked his slip free and caused the pipe to slide down or skid in some manner; and that the sliding or skidding of the pipe violently jerked appellee's left arm and dislocated it at the shoulder. Appellee alleged that he sustained either a fracture or a dislocation of the bones of his left shoulder which caused a break in the shoulder joint; that, as a result thereof, an excess amount of callous accumulated in the joint; the muscles, tendons, ligaments, nerves and blood vessels in and about the shoulder were stretched, strained and torn; that the upper arm, and upper back were injured; and there had been a chipping-off of part of the head of the upper arm-bone as well as injury to the rotation cuff and muscles which adduct and rotate the arm. He alleged that,

as a result of the injury, he immediately became totally incapacitated to work and retain employment; that such total incapacity had continued until the date of filing his petition; and, upon information and belief, he alleged his total incapacity was permanent and would last throughout his life. He prayed for judgment awarding him compensation at the rate of $25 per week for a period of 401 weeks and that it be paid to him in a lump sum.

Appellant answered by special exceptions, a general denial and specially that any injury appellee received was confined to his arm. It further alleged that any incapacity he had sustained was partial, rather than total, and that it was temporary, rather than permanent in its duration.

The case was submitted to a jury upon special issues in answer to which the jury found that, on the date alleged by him, appellee sustained an injury to his left shoulder while in the course of his employ for Moran Brothers; that he sustained incapacity to labor as the result of his injury; that he was totally incapacitated for 31 weeks; that he was thereafter partially incapacitated for work; that such partial incapacity would be permanent; and that the percentage of his partial incapacity was 30%.

Based upon the verdict of the jury the court entered judgment in favor of appellee for 31 weeks of total incapacity at the rate of $25 per week, to be credited with 17 weeks for which appellant had already paid appellee, and for weekly compensation for 300 weeks at the rate of $9.92 per week, being 30% of 60% of his average weekly wages. The court found that $459.12 of appellee's compensation had matured, after allowing credit for $425 theretofore paid by appellant, and judgment was rendered for the amount so remaining unpaid. Appellant filed its motion for a new trial, which was overruled by the court, and it gave notice of appeal and has duly perfected its appeal to this court.

Appellant contended in the trial court, and contends here, that any injury appellee received was confined to his left arm and, therefore, if he is entitled to com-

pensation, it is for a specific injury and compensable under Section 12 of Article 8306, Vernon's Revised Civil Statutes, and not general in its nature and compensable under Sections 10 and 11 of Article 8306, as contended by appellee. Appellant objected to the court's charge because it did not embrace an inquiry as to whether or not appellee's injury extended beyond the left arm and it requested the court to submit a special issue inquiring of the jury as to whether any injury sustained by appellee was confined to his arm. The court overruled the objection to the charge and refused to submit the requested special issue. To these actions of the court appellant duly excepted and has brought forward its objections and exceptions in the form of assignments and points of error. It contends that, in overruling its objection to the charge and refusing to submit its requested special issue, the court assumed, as a matter of law, that, if appellee had received an injury, it was a general injury, as distinguished from a specific one, and that, under the evidence in the case, that question was one of fact. It asserts, therefore, that the court erred in refusing to submit it to the jury. It contends that the question was material and important because the judgment allows a recovery for 31 weeks of total incapacity, against which a credit of 17 weeks of compensation is allowed, and that the 31-week period is followed by a recovery of partial incapacity for 300 weeks, all of which is based upon appellee's claim that his injury was a general one while, if it was specific, and confined to the arm, as contended by appellant, the recovery for partial incapacity would be limited to 200 weeks instead of 300 weeks and the 200 weeks would bear a credit of 17 weeks already paid by appellant.

■. From the foregoing statement it will be seen that the contention of appellant that appellee's injury, if any, is specific and not general, presents the controlling question in the case. There was ample testimony to support the finding of the jury that appellee received an accidental injury and, if there was any testimony to support appellant's contention that the injury was confined to his left arm and, therefore, was a specific injury, as distinguished from a general one, appellant is correct in its contention that a question of fact was presented and it should have been submitted to the jury.

The record shows that three X-ray films had been made of appellee's left shoulder, including the upper portion of his arm. It was shown by physicians that the shoulder blade, the collar bone and the socket into which the upper end of the arm-bone is normally located, together with the muscles, ligaments and tendons holding them together constitute the shoulder. One of the physicians testified that, in the X-ray film, he found damage to the shoulder blade which he believed had been fractured though the fracture did not show in the film. He said the fracture did not show because he believed it was impacted or the parts jammed into each other. He said there was elongation in the socket where the upper end of the arm should fit into the shoulder and that the arm had dropped down, thus increasing the distance from the shoulder blade to the upper end of the arm and that the condition interfered with the motion and movement of the arm. He said that in his opinion it was a condition that would be permanent. Another physician testified that on February 8, 1949, he made a physical examination of appellee's shoulder and found it swollen and a downward displacement of the upper end of the arm. He said he had examined the appellee three or four times and that he found limited motion of the shoulder joint and that appellee was unable to elevate the shoulder; that, in his later examinations, he had found no difference in appellee's condition from that which he found in his first examinations except the swelling had disappeared. He also testified that appellee's shoulder was dislocated and the upper end of the arm was resting on the lower rim of the socket; that the tissues, muscles, and ligaments were stretched and torn and that it was not possible for the arm to come out of the socket without doing damage to the soft tissues causing lost motion and function of the shoulder. The physicians testified to numerous other con-

ditions and that, on account of the injury, appellee's arm was not in a proper position at the time of the trial. There was no testimony whatever that appellee's arm had been injured in any respect. There was no evidence of any fracture of the bone nor atrophy of the flesh nor any other evidence that the arm itself had been injured. In testifying about his injury. appellee referred to it a number of times as his arm. He said the injury "tore my left arm up, shoulder and arm," and referred several times to his arm having been injured, but it is clear from his testimony that he was referring to the injury as testified to by the physicians which was to his shoulder.

Article 8306, Section 12, provides that, for the loss of an arm at or above the elbow, an employee shall receive 60% of his average weekly wage during 200 weeks. Many other specific injuries are provided for but nowhere in the statute is a remedy provided for a specific injury to the shoulder. Appellant cites us to the case of Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463, as authority for its contention. In our opinion the Langley case is not applicable here. In that case Langley sued as for a general injury; he alleged that the injury was to his leg and that it had caused a shortening of his leg which resulted in injury to the sacro-iliac and he was thus rendered incapable of performing any kind of work. The court submitted to the jury a special issue in which the jury was requested to find if Langley's total incapacity to work was due solely to the injury and loss of the use of his leg. The jury answered the special issue in the affirmative. There was evidence to support Langley's allegation that the injury to his leg had affected other portions of his body but the court did not submit an issue on that question. The Supreme Court held that it was the real question in the case and reversed the case because it had not been submitted to the jury.

Likewise, in Texas Employers' Ins. Ass'n v. Godwin, Tex.Civ.App., 194 S.W.2d 593, another case cited by appellant, the injury was confined to the appellee's finger. The claimants in those cases had suffered specific injuries, one to his leg and the other to his finger and the opinions were concerned with the question of whether or not the injuries had affected other portions of their bodies. Since appellee, Potter, did not receive any injury to his arm, that question is not in the case here. Appellee's injury was to the shoulder, particularly to the shoulder blade and the socket. The testimony also showed that the upper portion of his back was affected. The only manner in which the arm was affected was that it was torn loose from the socket and the upper end was resting on the lower rim of the socket into which it normally would have fitted. If he suffered loss of the use of his arm in any degree, it was not the result of any direct injury to the arm but resulted from the injury to his shoulder and was therefore a general injury and not a specific one. United States Fidelity & Guaranty Co. v. Pogue, Tex.Civ.App., 21 S.W.2d 43; Texas Employers' Ins. Ass'n v. Chitwood, Tex.Civ.App., 199 S.W.2d 806.

We conclude that, since there was no testimony to the effect that appellee's arm was injured in the accident, there was no issue of fact to submit to the jury upon the contention made by appellant that appellee's injury and its effects were confined to his arm. It follows that the court did not err in refusing to submit the special issues requested by appellant nor in overruling appellant's objection to the charge upon the ground that it did not include special issues upon the question of whether or not appellee's injury was specific and not a general injury.

We have carefully examined all of the contentions presented by appellant and, in our opinion, none of them presents error. The judgment of the court below will, therefore, be affirmed.